Patriot Manufacturing, Inc., and Southridge Homes, a division of Patriot (jointly "Patriot"), appeal from an order entered by the Washington Circuit Court denying their motion to compel arbitration. Southern Energy Homes, Inc. ("Southern Energy"), likewise appeals from an order entered by the Clarke Circuit Court denying motions to compel arbitration in two separate cases. We consolidated the three appeals; we now reverse.
 I. Patriot
Tasha Mitchell Jackson purchased a mobile home manufactured by Patriot. Patriot provided Jackson with a "Limited Warranty" to accompany the mobile home. That warranty included the following statement (entirely in capital letters): "THIS WARRANTY GIVES YOU SPECIFIC LEGAL RIGHTS, AND YOU MAY ALSO HAVE OTHER RIGHTS WHICH VARY FROM STATE TO STATE." The warranty made no mention of arbitration. In addition to signing the purchase agreement and receiving the warranty, however, Jackson signed various other documents, including a stand-alone arbitration agreement. That arbitration agreement provided, in pertinent part:
 "All disputes, claims or controversies of every kind or nature that may arise between or among [Jackson], Retailer, Patriot, [or] . . . their affiliates, subsidiaries, officers, agents or employees shall be settled by binding arbitration conducted pursuant to the provisions of 9 U.S.C. Section 1, et seq., and administered by the American Arbitration Association (`AAA') under its commercial Arbitration Rules, and judgment on the award rendered by the arbitrator may be entered in any Court having jurisdiction thereof. Without limiting the generality of the foregoing, it is the intention of [Jackson], the Retailer and Patriot to resolve by binding arbitration all disputes, whether arising out of tort, contract, or otherwise, arising from, concerning or related to
the Home, its design, sale, delivery, warranties, setup, repair, installation, manufacture, performance, condition, or financing or any insurance obtained in *Page 999 
connection with the Home, including any dispute, controversy, claim or question of any nature whatsoever related to the enforceability, validity, scope or interpretation of this Arbitration Agreement (hereinafter the `Agreement'). Arbitration under this Agreement shall be mandatory and not permissive."
(Emphasis added.) The arbitration agreement further provided that all parties "hereby voluntarily waive any right to a jury trial."
Jackson sued Patriot asserting various claims, including violation of 15 U.S.C. § 2301 et seq., known as the Magnuson — Moss Warranty-Federal Trade Commission Improvement Act. Patriot filed a motion to stay and to compel Jackson to arbitrate her claims, including her Magnuson-Moss Act claim. The trial court entered an order stating:
 "Since the manufacturers' written warranty never mentions arbitration, the express warranty claims and the claims brought pursuant to [the Magnuson-Moss Act] shall not be submitted to arbitration. While the express warranty claims against [Patriot] are not required to be submitted to arbitration, pursuant to Ex parte Thicklin, 824 So.2d 723 (Ala. 2002), all other claims in the plaintiff's complaint shall be submitted to arbitration pursuant to the American Arbitration Association's (AAA) procedures for consumer-related disputes."
 II. Southern Energy
In December 2001, Stephen R. Shoultz purchased a mobile home manufactured by Southern Energy; in September 2002, George Dunigan and Jean Dunigan purchased a mobile home manufactured by Southern Energy. Southern Energy provided both Shoultz and the Dunigans a "Limited Warranty" covering their respective mobile homes. In those warranties was the following statement (entirely in capital letters): "THIS LIMITED WARRANTY GIVES YOU SPECIFIC LEGAL RIGHTS, AND YOU MAY ALSO HAVE OTHER RIGHTS WHICH MAY VARY FROM STATE TO STATE." The warranties made no mention of arbitration. In addition to signing their respective purchase agreements and receiving their warranties, however, Shoultz and the Dunigans each signed other documents, including a stand-alone, two-page arbitration agreement. That arbitration agreement provided, in pertinent part:
 "You and We agree to arbitrate any and all claims and disputes arising from or relating to the Contract, the Manufactured Home, the sale of the Manufactured Home, the design and construction of the Manufactured Home, the financing of the Manufactured Home, and any other disputes between You and Us, including any disputes regarding the enforceability, interpretation, breadth, scope and meaning of this Agreement. The arbitration will be binding. You and We further agree to waive any right to trial by jury in any civil action arising from or relating to the Contract, the Manufactured Home, the sale of the Manufactured Home, the design and construction of the Manufactured Home, the financing of the Manufactured Home and any other disputes between You and Us."
The arbitration agreement further defined "Contract" to "include, but not be limited to, . . . any warranty." (Emphasis added.) In addition to the language quoted immediately above indicating that the parties were waiving their right to a trial by jury, the arbitration agreement also contains the following separate, underlined section: *Page 1000 
"IMPORTANT — JURY WAIVER
 "You and We hereby irrevocably waive our right to trial by jury on any claims that You now have or may hereafter acquire against Us or that We now have or may hereafter acquire against You. This waiver will remain enforceable even if this Agreement, or any portion of it, is otherwise found to be unenforceable."
(Capitalization in original.) The parties signed the arbitration agreement on signature lines located immediately below this jury-waiver section.
The Dunigans sued Southern Energy asserting various claims, including violation of the Magnuson-Moss Act. Shoultz sued Southern Energy a few months later, also asserting various claims, including violations of the Magnuson-Moss Act. In each action, Southern Energy filed a motion to compel arbitration. The trial court consolidated the Shoultz and Dunigan actions for purposes of considering Southern Energy's motions to compel arbitration and conducted a hearing on the motions. The court denied Southern Energy's motions as to both Shoultz and the Dunigans. The reasoning stated by the trial judge in his order was identical to the reasoning he, as the judge also handling Jackson's action, had expressed in denying Patriot's motion. Southern Energy timely appealed as to each order. Upon motion filed by Southern Energy, this Court consolidated the two appeals. This Court further consolidated those two appeals with Patriot's appeal for purposes of writing one opinion.
 III. Standard of Review
We review de novo the denial of a motion to compel arbitration.Springhill Nursing Homes, Inc. v. McCurdy, 898 So.2d 694, 696
(Ala. 2004). The party seeking to compel arbitration has the burden of proving both that a contract calling for arbitration exists and that the contract evidences a transaction affecting interstate commerce. McCurdy, 898 So.2d at 696. Once this prima facie showing has been made, the burden then shifts to the party opposing arbitration to present substantial evidence indicating that the supposed arbitration agreement is either invalid or inapplicable to the dispute as to which arbitration is being sought. Unum Life Ins. Co. of America v. Wright,897 So.2d 1059, 1081 (Ala. 2004).
 IV. Analysis A. Federal Arbitration Act
The Federal Arbitration Act ("the FAA") provides that arbitration agreements are "valid, irrevocable, and enforceable" unless there are "grounds as exist at law or in equity for the revocation of any contract," 9 U.S.C. § 2, thus establishing a strong "federal policy favoring arbitration." Moses H. ConeMem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24,103 S.Ct. 927, 74 L.Ed.2d 765 (1983). In Shearson/American Express, Inc.v. McMahon, 482 U.S. 220, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987), the United States Supreme Court noted that the duty to enforce an arbitration agreement is "not diminished when a party bound by an [arbitration] agreement raises a claim founded on statutory rights." McMahon, 482 U.S. at 226, 107 S.Ct. 2332. Consequently, barring circumstances not suggested in this case, "the [FAA] `provides no basis for disfavoring agreements to arbitrate statutory claims by skewing the otherwise hospitable inquiry into arbitrability.'" Id. (quoting Mitsubishi MotorsCorp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 627,105 S.Ct. 3346, 87 L.Ed.2d 444 (1985)).
"Like any statutory directive," however, the FAA is a congressional creation, and its mandate "may be overridden *Page 1001 
by a contrary congressional command." McMahon, 482 U.S. at 226,107 S.Ct. 2332. "If Congress did intend to limit or prohibit waiver of a judicial forum . . ., such an intent `will be deductible from [the statute's] text or legislative history,' . . . or from an inherent conflict between arbitration and the statute's underlying purposes." McMahon, 482 U.S. at 227,107 S.Ct. 2332 (quoting Mitsubishi, 473 U.S. at 628,105 S.Ct. 3346).
 B. Magnuson-Moss Act
The Magnuson-Moss Act was enacted for three basic purposes: "[i]n order to improve the adequacy of information available to consumers, prevent deception, and improve competition in the marketing of consumer products." 15 U.S.C. § 2302(a). This section of the Magnuson-Moss Act consequently requires that a warrantor who provides a warranty "shall, to the extent required by the rules of the [Federal Trade] Commission, fully and conspicuously disclose in simple and readily understood language the terms and conditions of such warranty." Id. This language establishes that a warrantor need not disclose every conceivable term or condition of the warranty, but only those that the rules of the Federal Trade Commission ("the FTC") require it to make known.
The Magnuson-Moss Act delegated to the FTC the authority to require warrantors to include various terms and conditions within written warranties. To that end, Congress suggested in the Magnuson-Moss Act various terms the FTC might choose to require. Among the 13 suggested terms or conditions, Congress recommended that the FTC require warrantors to disclose "[i]nformation respecting the availability of any informal dispute settlement procedure offered by the warrantor." 15 U.S.C. § 2302(a)(8).
The FTC obliged Congress by including within its rules and regulations a provision requiring that warrantors "clearly and conspicuously disclose in a single document . . . [i]nformation respecting the availability of any informal dispute settlementmechanism elected by the warrantor." 16 C.F.R. § 701.3(a)(6). (Emphasis added.) Section 701.3(a) is colloquially referred to as the "single-document rule" because of its requirement that certain information be disclosed within a single document, i.e., the written warranty.
Besides recommending that the FTC require warrantors to disclose "the availability of any informal dispute settlement procedure," 15 U.S.C. § 2302(a)(8), Congress also charged the FTC with prescribing rules for such a procedure. 15 U.S.C. § 2310(a). An informal dispute-settlement procedure, or as Congress chose alternatively to designate it at one point (15 U.S.C. § 2310(a)(1)) and as the FTC likewise chose to characterize it, an informal dispute-settlement mechanism,[1] would serve as a means by which customers dissatisfied with the warrantor's performance of its obligations could seek redress, yet it would spare a warrantor the burden of immediately litigating a dispute concerning its performance of warranty obligations. Congress explicitly stated that if a warrantor establishes a conforming informal dispute-settlement mechanism, "the consumer may not commence a civil action . . . unless he initially resorts to such procedure." 15 U.S.C. § 2310(a)(3). (Emphasis added.) Congress's use of the word "unless" demonstrates that a consumer may nevertheless *Page 1002 
pursue an action after resorting to the dispute-settlement mechanism; thus, the outcome of the mechanism is nonbinding in character.
 C. Precedent
In Ex parte Thicklin, 824 So.2d 723 (Ala. 2002), this Court confronted a question of first impression in Alabama: whether a stand-alone arbitration agreement may be used to compel arbitration of Magnuson-Moss Act claims. In Thicklin, we held that the Magnuson-Moss Act requires that an arbitration agreement be contained within the body of the warranty. 824 So.2d at 730. Because the agreement in Thicklin existed apart from the warranty, we reversed the trial court's order compelling arbitration.
Thicklin was decided in express reliance upon a decision of the United States Court of Appeals for the Eleventh Circuit:Cunningham v. Fleetwood Homes of Georgia, 253 F.3d 611 (11th Cir. 2001). Patriot and Southern Energy, as well as amici curiae the Business Council of Alabama and the Alabama Manufactured Housing Institute, argue that Thicklin should be revisited and overruled to the extent it holds that a stand-alone arbitration agreement cannot be used to compel arbitration of Magnuson-Moss Act claims. They contend that the rationale of Cunningham, which this Court followed in deciding Thicklin, has been delegitimized by a later decision of the Eleventh Circuit, Davisv. Southern Energy Homes, Inc., 305 F.3d 1268 (11th Cir. 2002). We shall examine these decisions in turn.
1. Cunningham
In Cunningham, a mobile-home manufacturer moved to compel arbitration as to the plaintiffs' claims under the Magnuson-Moss Act, relying on a stand-alone arbitration agreement executed between the plaintiffs and the seller of the mobile home.[2] The Court of Appeals for the Eleventh Circuit affirmed the trial court's order denying the motion.Cunningham's holding rests upon the following rationale.
First, the Eleventh Circuit examined 15 U.S.C. § 2310(a), the codified form of the Magnuson-Moss Act — which provides that a consumer may not file suit until he first resorts to an informal dispute-settlement mechanism — and noted that although the subsection makes the mechanism a prerequisite to filing suit, it does not necessarily bar arbitration. The court nevertheless concluded that § 2310 played a role in prohibiting arbitration inCunningham. The court stated only that "other key provisions
of Magnuson-Moss, together with § 2310, cast considerable doubt on the propriety of the particular arrangement at issue here,"253 F.3d at 620 (emphasis added), although not explaining exactly how § 2310 did so.
One of the "other key provisions" identified by theCunningham court as casting doubt on the arbitration agreement at issue was § 2302(a), which requires disclosure of the terms and conditions of the warranty. That section, however, was quoted so as to omit a key phrase:
 "The Act requires that any warrantor that chooses to provide a written warranty with a consumer product `shall . . . fully and conspicuously disclose in simple and readily understood language the terms and conditions of such warranty.'" *Page 1003 
253 F.3d at 620 (quoting 15 U.S.C. § 2302(a)). As noted in Part IV.B. of this opinion, however, the full content of that particular quoted phrase declares that any such warranty "shall,to the extent required by the rules of the [FTC], fully and conspicuously disclose in simple and readily understood language the terms and conditions of such warranty." 15 U.S.C. § 2302(a) (emphasis added). The emphasized qualifier is critical and was essentially ignored by the Cunningham court in its construction of § 2302(a), which that court concluded requires a warrantor to disclose within the body of the warranty the existence of an arbitration agreement. 253 F.3d at 622, 624. That conclusion was, in the final analysis, necessarily bottomed on the premise that arbitration is a variety of an "informal dispute settlement mechanism," or, as the Court of Appeals for the Eleventh Circuit interchangeably termed it, an "informal dispute resolution
mechanism." 253 F.3d at 622 (emphasis added). This is reflected in the court's explanations that the manufacturer's attempt "to compel arbitration where [the manufacturer] has failed to disclose in the warranty a term or clause requiring the Cunninghams to utilize an informal dispute resolution mechanism contravenes the text, legislative history, and purposes of the Magnuson-Moss Warranty Act," 253 F.3d at 622, and that "[b]ecause we conclude that [the manufacturer's] failure to disclose in the warranty a term or clause requiring the Cunninghams to utilize an informal dispute resolution mechanism runs afoul of the disclosure requirements of the Magnuson-Moss Warranty Act, we affirm the district court's order declining to compel arbitration of the written or express warranty claims." 253 F.3d at 624.
The final feature of Cunningham's reasoning was that compelling arbitration under the stand-alone arbitration agreement would present inherent conflicts with the purpose of the Magnuson-Moss Act. The court focused upon two different "purposes" of the Magnuson-Moss Act. First, the court stated that arbitration of the agreement conflicted with the Act's "purpose of providing clear and concise warranties to consumers."253 F.3d at 622. As noted, the Magnuson-Moss Act stated among its purposes the aim "to improve the adequacy of information available to consumers, [and to] prevent deception." 15 U.S.C. § 2302(a). The Act's purpose of improving the adequacy of information is aimed at incrementally enhancing the content and amount of information disclosed, but, importantly, only "to the extent required by the rules of the [FTC]." 15 U.S.C. § 2302(a). With regard to its purpose of preventing deception, Congress saw fit in the Magnuson-Moss Act to define a "deceptive warranty," thus providing this Court with guidance as to the exact practices that Congress sought to prevent. A written warranty is deceptive when it "fails to contain information which is necessary in light of all of the circumstances, to make the warranty not misleading to a reasonable individual exercising due care."15 U.S.C. § 2310(c)(2)(ii). In considering all of the circumstances, we must consider all other documentation included with the sale of the mobile homes at issue here. The stand-alone arbitration agreements, which all parties signed, specifically stated that the parties agreed to arbitrate all claims, including those regarding warranties. Surely due care, if it means anything, at the very least requires reading a document one has signed.
Cunningham also stated that requiring a warrantor to place an arbitration agreement within the body of the warranty furthered Congress's purpose of "`improv[ing] competition in the marketing of consumer products.'" 253 F.3d at 623 (quoting15 U.S.C. § 2302(a)). Allowing *Page 1004 
the warrantor to rely on an arbitration agreement apart from the warranty would, the court said,
 "confound this purpose in that consumers confronted with warranties that do not contain arbitration clauses that are nonetheless subject to arbitration will have no basis for judging the suitability of a warranty. This is of particular concern because the warranty is issued unilaterally, and, as the enactors of Magnuson-Moss noted, a consumer cannot bargain with manufacturers to adjust the terms of a warranty offered voluntarily by the manufacturer: `[t]he warranty provisions of [Magnuson-Moss] are not only designed to make warranties understandable to consumers, but to redress the ill effects resulting from the imbalance which presently exists in the relative bargaining power of consumers and suppliers of consumer products.' [40 Fed.Reg. 60,168 (Dec. 31, 1975) (quoting S.Rep. No. 93-151 (1973))]. The unilateral nature of warranties by manufacturers makes full disclosure in a single document mandatory for the attainment of Congress's goals."
253 F.3d at 623 (emphasis added).
Although we acknowledge Congress's concern regarding the complexity of warranties and the potentially unequal bargaining power between consumers and warrantors, and although those factors can affect competition in marketing consumer products, presuming that the existence of an enforceable arbitration agreement would make a product or its warranty less "suitable" conflicts with the United States Supreme Court's determination that arbitration agreements do not affect the substantive rights of a party, Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth,Inc., 473 U.S. at 626-27, 105 S.Ct. 3346. As Cunningham itself acknowledged, "[a]greements to arbitrate are essentially forum-selection clauses." 253 F.3d at 617. The Cunningham
court's reasoning that a warranty that does not disclose the existence of an arbitration agreement is somehow "unsuitable" and thus somehow "confounds" Congress's designs is therefore dubious.
2. Thicklin
Less than one year after Cunningham was decided, this Court issued its opinion in Ex parte Thicklin, expressly relying solely upon Cunningham to conclude that a manufacturer's failure to disclose in the body of the warranty the existence of an arbitration agreement violated the disclosure requirement in the Magnuson-Moss Act. In so doing, we also overruled our prior decision in Cavalier Manufacturing, Inc. v. Jackson,823 So.2d 1237 (Ala. 2001), to the extent it conflicted with the holding inThicklin. Jackson had held that the Magnuson-Moss Act did not apply to arbitration agreements not expressed in warranties.823 So.2d at 1241.
3. Davis
On September 19, 2002, in Davis, the United States Court of Appeals for the Eleventh Circuit reversed the order of the district court denying a manufacturer's motion to compel arbitration. Davis concerned an arbitration clause within the body of a written warranty. The Eleventh Circuit decided that nothing in the text, legislative history, or inherent purposes of the Magnuson-Moss Act conflicted with the enforcement of binding arbitration. In so doing, the Davis court explicitly rejected any notion that arbitration is equivalent to or a variety of an informal dispute-settlement mechanism.
Looking to the text of the Magnuson-Moss Act, the court observed that "[t]he fact that [the Magnuson-Moss Act] regulates § 2310(a) informal dispute settlement *Page 1005 
procedures does not mean that the Act precludes a court from enforcing a valid binding arbitration agreement," proceeding to state that the court was "unpersuaded that Congress intended to bar binding arbitration agreements in the language of [the Magnuson-Moss Act]." 305 F.3d at 1275. Looking to the legislative history of the Magnuson-Moss Act, the Eleventh Circuit quoted from the resolution of a similar issue by the United States Court of Appeals for the Fifth Circuit in Walton v. Rose Mobile HomesLLC, 298 F.3d 470 (5th Cir. 2002), which observed:
 "[T]here is still no evidence that Congress intended binding arbitration to be considered an informal dispute settlement procedure. Therefore the fact that any informal dispute settlement procedure must be non-binding, does not imply that Congress meant to preclude binding arbitration, which is of a different nature."
Davis, 305 F.3d at 1276 (quoting Walton, 298 F.3d at 476). The court then concluded that "Congress did not express a clear intent in [the Magnuson-Moss Act's] legislative history to bar binding arbitration agreements in written warranties."305 F.3d at 1276. Finally, the court concluded that the inherent purposes of the Magnuson-Moss Act and the FAA were completely harmonious.305 F.3d at 1276-77.
4. Summary and Implications
The appellants argue that the rationale of Davis abrogates the reasoning of Cunningham and thus of Thicklin. BecauseDavis specifically cites Cunningham without disapproval,[3] this assertion requires closer examination of the rationale of Cunningham.
The first prong of Cunningham's holding was at least implicitly premised upon the close relationship, if not the outright synonymity, between arbitration and informal dispute-settlement mechanisms, for the purposes of the disclosure requirements of the Magnuson-Moss Act and, consequently, of the single-document rule. Davis wholly repudiates such a notion, demonstrating that nothing in the text, legislative history, or purposes of the Magnuson-Moss Act indicates that arbitration was in any way considered or accounted for in crafting the Magnuson-Moss Act, including the provisions in the Act for informal dispute-settlement mechanisms. We therefore read Davis
to discredit the assumption unavoidably present in Cunningham
that arbitration, for purposes of determining whether there was sufficient disclosure, is a type of informal dispute-settlement mechanism and therefore to seriously undercut the first aspect of the Cunningham analysis.
In addition, we view the other prong of Cunningham's
rationale — that the underlying purposes of the Magnuson-Moss Act would be frustrated by enforcement of any arbitration clause not contained within the warranty itself — as similarly without support. As explained above, the Cunningham court found no conflict between arbitration and the actual purpose of the Magnuson-Moss Act of enhancing information, instead finding a conflict only with the notion of "clear and concise warranties."253 F.3d at 622. Also, the Cunningham court found a conflict with the Magnuson-Moss Act's purpose of fostering competition only by viewing arbitration agreements with hostility, a perspective the United States Supreme Court rejected inMitsubishi Motors. This *Page 1006 
"purpose" analysis prong of Cunningham thus wavers upon close scrutiny and, with it, the entire holding of that case.
In short, we consider a key feature of the rationale ofCunningham significantly undermined by Davis, and the remainder of the Cunningham rationale insufficient to justify its holding, and we no longer regard Cunningham as reliable authority on the question whether a stand-alone arbitration agreement may be used to compel arbitration. The Magnuson-Moss Act requires disclosure in the warranty itself only "to the extent required by the rules of the [FTC]," and the FTC has seen fit to require disclosure of required resort to an informal dispute-settlement mechanism, not the completely separate process of binding arbitration. Because our decision in Thicklin on that question relied solely upon Cunningham, and additionally because no decision since Thicklin has expressly relied uponits holding on that issue, the principle of stare decisis
does not weigh so heavily against a reconsideration of whetherThicklin was correctly decided. Therefore, we overruleThicklin to the extent it holds that an arbitration agreement must be contained within a written warranty.
In their briefs, Jackson, Shoultz, and the Dunigans correctly point out that this Court's standard of review requires us to determine first whether the movant has proved the existence of a valid contract calling for arbitration.[4] Each plaintiff argues that the movant in his or her case (whether Patriot or Southern Energy) cannot meet this burden because, the plaintiff says, the contract calling for arbitration — the arbitration agreement — is invalid in that it is not disclosed in the warranty. This failure to disclose, assert the plaintiffs, violates the single-document rule, as interpreted by Thicklin.
Having overruled Thicklin, however, we are unconvinced by the plaintiffs' argument; rather, we conclude that the arbitration agreements upon which the motions to compel were based are valid and that both Patriot and Southern Energy have met their respective burdens.
Under our standard of review, once a movant has met its burden, the burden then shifts to the nonmovant to demonstrate that the contract is either invalid or inapplicable. Neither Jackson, Shoultz, nor the Dunigans have anticipated the possibility that this Court might find that the burden has shifted to them; thus they have not endeavored to argue that they have met their burden. Consequently, we are obliged to conclude that the plaintiffs have in fact not met the burden that shifted to them, and we therefore conclude that the motions to compel filed by both Patriot and Southern Energy are due to be granted and that the trial court erred in denying those motions.
Because the trial court erred in denying Patriot's and Southern Energy's motions to compel arbitration, albeit in reliance on our holding in Ex parte Thicklin, we reverse the trial court's orders. As noted above, we overrule Ex parte Thicklin to the extent it conflicts with our decision today, and additionally, because Thicklin overruled the holding of CavalierManufacturing, Inc. v. Jackson on a similar issue, we hereby reinstate the precedential value of that decision, to the extent that it does not conflict with this decision.
 Conclusion
The orders of the trial court denying Patriot's and Southern Energy's motions *Page 1007 
to compel arbitration are reversed, and the three causes are remanded for proceedings consistent with this opinion.
1040915 — REVERSED AND REMANDED.
1040935 — REVERSED AND REMANDED.
1041017 — REVERSED AND REMANDED.
NABERS, C.J., and SEE, LYONS, WOODALL, SMITH, and BOLIN, JJ., concur.
STUART and PARKER, JJ., concur in the result.
[1] An informal dispute-settlement procedure and an informal dispute-settlement mechanism appear to be identical in form and function, differing in name only. Because of its more common usage, however, we use the term "mechanism."
[2] Although the plaintiffs executed the stand-alone arbitration agreement with only the seller, not the manufacturer, the Eleventh Circuit "assume[d] for the purpose of deciding this case that [the manufacturer was] entitled to the benefit of the arbitration agreement." 253 F.3d at 614.
[3] This is not to say, however, that Davis approves of the rationale used by the Cunningham court. Rather, Davis
distinguishes itself from Cunningham and thus has no real reason to offer up a judgment on Cunningham.
[4] As noted in our discussion of the standard of review, the movant must also prove that the contract evidences a transaction involving interstate commerce. This issue, however, is uncontroverted.