968 So.2d 520 (2006)
ADVANCE TANK AND CONSTRUCTION COMPANY, INC.
v.
GULF COAST ASPHALT COMPANY, L.L.C.
1031875.
Supreme Court of Alabama.
February 3, 2006.
*522 A.H. Gaede, Jr., Jonathan B. Head, and Leigh Anne Hamburg of Bradley Arant Rose & White, LLP, Birmingham, for appellant.
Samuel H. Franklin of Lightfoot, Franklin & White, L.L.C., Birmingham; and J. Don Foster of Jackson, Foster & Graham, L.L.C., Mobile, for appellee.
SMITH, Justice.
The defendant below, Advance Tank and Construction Company, Inc. ("Advance Tank"), appeals from the denial of its motion to compel arbitration of the claims of the plaintiff, Gulf Coast Asphalt Company, L.L.C. ("Gulf Coast"). We reverse and remand.

Facts and Procedural History
Gulf Coast operates a shipping terminal in Mobile. Advance Tank, which is located in Colorado, manufactures and installs steel tanks. On November 6, 2002, Gulf Coast entered into a contract with Advance Tank for the construction of certain tanks at the shipping terminal. Although the record and briefs are unclear as to the details of the construction project, a dispute apparently arose between Gulf Coast and Advance Tank regarding the project.
On June 17, 2004, Gulf Coast sued Advance Tank, seeking damages on claims of breach of contract, negligence, and money had and received. On July 23, 2004, Advance Tank filed a claim in arbitration against Gulf Coast. On August 4, 2004, Gulf Coast filed a motion in the trial court seeking an order restraining Advance Tank from pursuing arbitration. On August 9, 2004, the trial court granted the motion and entered a temporary restraining order. That same day, Advance Tank filed in the trial court a motion to compel arbitration. Gulf Coast filed a response in opposition to the motion to compel.
On August 26, 2004, the trial court issued an order enjoining Advance Tank from pursuing any claim in arbitration and denying Advance Tank's motion to compel arbitration. Advance Tank appeals. See Rule 4(d), Ala. R.App. P.

Standard of Review
"We review de novo the denial of a motion to compel arbitration. Springhill Nursing Homes, Inc. v. McCurdy, 898 So.2d 694, 696 (Ala.2004). The party seeking to compel arbitration has the burden of proving both that a contract calling for arbitration exists and that the contract evidences a transaction affecting interstate commerce. McCurdy, 898 So.2d at 696. Once this prima facie showing has been made, the burden then shifts to the party opposing arbitration to present substantial evidence indicating that the supposed arbitration agreement is either invalid or inapplicable to the dispute as to which arbitration is being sought. Unum Life Ins. Co. of America v. Wright, 897 So.2d 1059, 1081 (Ala.2004)."
Patriot Mfg., Inc. v. Jackson, 929 So.2d 997, 1000 (Ala.2005).

*523 Discussion

A.
In support of its motion to compel arbitration, Advance Tank filed a copy of the construction contract at issue in this case, as well as an affidavit by Terry Hyatt, vice president of Advance Tank. The contract consists of 20 pages. Each page indicates its number of the 20, e.g., 15 of 20. Section 1 of the contract, entitled "Work and Contract Documents," states, in part:
"It is agreed, effective the last date of execution hereof . . . that:
"A. [Advance Tank] will . . . in a professional and workmanlike manner construct and complete construction of Tanks at [Gulf Coast's] terminal . . . as provided for in the Bid Specifications for Construction of Tanks, Additional Requirements[,] and Contractors Proposal.
"B. [Advance Tank] will furnish and pay for all material, labor, tools, equipment, utilities, facilities, etc., necessary therefore [sic], and related items as described and identified herein and on the attached drawings[,] documents, and specifications; all of which are hereby specifically incorporated herein by reference as if set forth word for word; all of said Exhibits hereinafter collectively referred to as the `Work.' All of the Work will be in accordance with all applicable laws, rules, and regulations, and consistent with the terms hereof; in accordance with the attached specifications incorporated herein by reference, as the same may be modified in writing from time to time; and, in accordance with the following additional attached documents which are incorporated by reference and made a part hereof as follows:
"Attachment ABid Specifications for Construction of Tanks at Mobile, Alabama
"Attachment BReserved[[1]]
"Attachment CAdditional Requirements
"Attachment DContractors Proposal."
"Attachment D," also referred to as the "Contractors Proposal," consists of page "17 of 20" through page "20 of 20" of the contract. It is dated September 12, 2002, and is a letter addressed to Summit Terminaling Services, L.L.C.[2] Although this document appears to have been drafted before the contract was drafted, the title "Attachment D" appears at the top of the first page of the letter, and the page-numbering scheme of the entire contract appears at the bottom of its pages.
Attachment D discusses the specifications and the terms of a proposal or agreement regarding the construction of a 97-foot diameter asphalt tank. On page "18 of 20," it states: "Terms and Conditions: The attached terms and conditions form a part of this proposal and shall apply." On the next page, page "19 of 20," it states: "The attached Terms and Conditions shall form a part or [sic] this proposal. However, we do not anticipate any difficulty in negotiating mutually agreeable contract terms." Finally, the bottom of page "20 of 20" states: "Attachments: Terms and Conditions."
Advance Tank also included with its motion to compel arbitration a document entitled "Advance Tank Construction Company Standard Terms and Conditions." This document states that it is part of Advance Tank's "Proposal." Section 12 of the document *524 contains an arbitration provision, which states, in pertinent part:
"DISPUTE: All disputes between the parties, which cannot be amicably settled, shall be settled by binding arbitration according to the American Arbitration Association Construction Industry Rules. The arbitration shall take place in Denver, Colorado."
According to Hyatt's affidavit, a copy of Advance Tank's standard terms and conditions was transmitted with the September 12, 2002, proposal.
"Parties to a contract are bound by pertinent references therein to outside facts and documents." Ex parte Dan Tucker Auto Sales, Inc., 718 So.2d 33, 36 (Ala.1998). "`Other writings, or matters contained therein, which are referred to in a written contract[,] may be regarded as incorporated by the reference as a part of the contract and[,] therefore, may properly be considered in the construction of the contract.' 17A Am.Jur.2d Contracts § 400 (1991)." 718 So.2d at 36. "`[A] contract may incorporate the terms of another document by reference.' McDougle v. Silvernell, 738 So.2d 806, 808 (Ala.1999)." Cavalier Mfg., Inc. v. Clarke, 862 So.2d 634, 640 (Ala.2003). Attachment D, which was part of the contract, expressly incorporated by reference Advance Tank's standard terms and conditions, which contained the arbitration provision. This arbitration provision was therefore part of the contract. Thus, Advance Tank produced substantial evidence that the contract in this case called for arbitration of "all disputes."[3]

B.
Gulf Coast disputes whether the parties actually assented to the arbitration provision. First, Gulf Coast contends that Attachment D was not actually part of the contract. Specifically, Gulf Coast argues that the dispute in this case involves Advance Tank's failure to properly construct certain methanol tanks and that Attachment D was merely a proposal for the construction of an asphalt tank. Gulf Coast argues that it is "undisputed" that the "proposal" was not accepted by Gulf Coast, and that the contract ultimately entered into by the parties in November 2002 was "strikingly different" from the asphalt tank "offer," represented by Attachment D.
Gulf Coast's argument, however, is refuted by the plain language of the contract. Section 1 of the contract states that Advance Tank will "construct and complete construction of Tanks at [Gulf Coast's] terminal . . . as provided for in the . . . Contractors Proposal." (Some emphasis added.) The "Contractors Proposal" is Attachment D and contains detailed specifications for the construction of an asphalt tank. Moreover, part B of section 1, quoted above, explicitly "incorporated by reference and made a part" of the contract "Attachment DContractors Proposal."
The contract also references the construction of the asphalt tank in other places. Attachment B, which includes pages "14 of 20" and "15 of 20," is titled "Asphalt Tank Specifications" and details the construction of an asphalt tank "in addition to previously quoted methanol tanks." Attachment C notes additional details regarding the construction of both an asphalt tank and methanol tanks. In fact, the contract itself contains no description of the methanol tanks that were to be constructed; instead, it appears those specifications are incorporated by reference by Attachment A, which simply refers *525 to "Bid Specifications" of "tanks" provided in an "initial bid request dated July 8, 2002."[4] No less than 5 of the 20 pages of the contract detail the construction of an asphalt tank, while no pages are devoted to the specifications for the methanol tanks. We thus find it inexplicable to suggest that the contract in this case involves only the construction of methanol tanks, and not an asphalt tank.
Gulf Coast also argues that Attachment D was included as part of the contract only in order to provide more specifications for the tanks that were to be constructed.[5] Gulf Coast states in its brief to this Court:
"To the extent that the final contract incorporates the provisions of the documents attached as pages 14 of 20 through 20 of 20 of the contract, it does so for the express purpose of more specifically defining the `Work' which the contractor is obligated to construct and complete, including the technical design specifications for the `Tanks.'"
Gulf Coast's brief at 46.
The language of the contract does not indicate that Attachment D was included solely to offer more detailed technical specifications. Section 1, part A, of the contract, quoted above, states that Advance Tank will "construct and complete construction of Tanks at [Gulf Coast's] terminal . . . as provided for in the . . . Contractors Proposal [Attachment D]." Attachment D not only contains specifications for the construction of the asphalt tank, but also details, among other things, work-site conditions; the names of the Advance Tank employees responsible for supervising the project, including their qualifications; and policies relating to the drug testing of Advance Tank employees. Nothing in the contract indicates that only the specifications "provided for" in Attachment D were incorporated.[6]

C.
Gulf Coast also argues that the arbitration provision in the terms-and-conditions document conflicts with section 33 of the contract, titled "Governing LawVenueService of Process." Section 33 states:
"This Contract shall be deemed to be made under and shall be governed by *526 the laws of the State of Alabama in all respects, including without limitation, matters of construction, validity, performance and venue. [Advance Tank] hereby expressly agrees that the venue for any litigation hereunder or related hereto shall be in Mobile County, Alabama, and hereby consents to the jurisdiction of the courts located therein over its/their person in any action to enforce any provisions hereof, and agrees that service of process may be made wherever [Advance Tank] may be found and that such service shall be valid and binding as if personal service had been made upon [Advance Tank] within Alabama."
Gulf Coast further maintains that section 28 of the contract, titled "Conflicts in Documents," requires that the contract take precedence over the terms and conditions. Section 28 states in pertinent part: "If there is any conflict between this and any other document forming a part of this contract, this document shall control."
"Terms of a written instrument should be construed in pari materia and a construction adopted that gives effect to all terms used. Inconsistent parts in a contract are to be reconciled, if susceptible of reconciliation. . . ." Sullivan, Long & Hagerty v. Southern Elec. Generating Co., 667 So.2d 722, 725 (Ala.1995) (citation omitted). "The law is settled that this Court is bound to construe contracts so as to give meaning to all provisions whenever possible." Board of Water & Sewer Comm'rs of City of Mobile v. Bill Harbert Constr. Co., 870 So.2d 699, 710 (Ala.2003).
Advance Tank, citing Personal Security & Safety Systems Inc. v. Motorola Inc., 297 F.3d 388 (5th Cir.2002), argues that a forum-selection clause generally does not conflict with an arbitration provision. In Personal Security, the court was called upon to determine whether a forum-selection clause in a stock-purchase agreement conflicted with an arbitration agreement contained in a licensing agreement that was executed alongside the stock-purchase agreement. The forum-selection clause stated: "Governing law. This agreement shall be governed by and construed in accordance with the laws of the State of Texas. Any suit or proceeding brought hereunder shall be subject to the exclusive jurisdiction of the courts located in Texas." 297 F.3d at 395 (some capitalization omitted). The plaintiff in that case, PSSI, argued that the forum-selection clause required that any dispute arising out of the stock-purchase agreement be litigated in Texas courts, thus expressly excluding arbitration. The court held:
"We do not find PSSI's interpretation of the forum selection clause persuasive. Standing alone, one could plausibly read the forum selection clause to mean that Texas courts have the exclusive power to resolve all disputes arising under the Stock Purchase Agreement. But the forum selection clause does not stand alone. To the contrary, we must interpret the forum selection clause in the context of the entire contractual arrangement and we must give effect to all of the terms of that arrangement. See Richland Plantation Co. v. Justiss-Mears Oil Co., Inc., 671 F.2d 154, 156 (5th Cir.1982) (`When several documents represent one agreement, all must be construed together in an attempt to discern the intent of the parties, reconciling apparently conflicting provisions and attempting to give effect to all of them, if possible.'). Given our conclusion that the arbitration provision in the Product Development Agreement applies to all claims related to the overall transaction, we must therefore interpret the forum selection provision in the Stock Purchase Agreement in a manner that is consistent with the arbitration provision.

*527 "Reading the two provisions together, it becomes clear that the forum selection clause does not require the parties to litigate all claims in Texas courts, nor does it expressly forbid arbitration of claims arising under the Stock Purchase Agreement. Instead, we interpret the forum selection clause to mean that the parties must litigate in Texas courts only those disputes that are not subject to arbitrationfor example, a suit to challenge the validity or application of the arbitration clause or an action to enforce an arbitration award. Rather than covering all `disputes' or all `claims' like the arbitration provision in the Product Development Agreement, the forum selection clause confers `exclusive jurisdiction' on Texas courts only with respect to `any suit or proceeding.' This limitation suggests that the parties intended the clause to apply only in the event of a non-arbitrable dispute that must be litigated in court."
Personal Security, 297 F.3d at 395-96 (footnotes omitted). See also Bank Julius Baer & Co., Ltd. v. Waxfield Ltd., 424 F.3d 278, 285 (2d Cir.2005) (holding that a forum-selection provision was "complementary" to a prior agreement to arbitrate and its presence in the contract did not specifically preclude arbitration).
We agree with Advance Tank that the forum-selection clause in this case does not conflict with the arbitration provision. The forum-selection clause states that Advance Tank, a Colorado corporation, agrees that "venue" for any "litigation" shall be in Mobile County, and that it "consents" to the jurisdiction of courts there for "any action to enforce any provisions" of the contract. This clause does not express preference for the method of dispute resolution; rather, it appears to express a preference for venue and an apparent consent to the jurisdiction of the courts of Mobile County. In other words, while the clause expresses an agreement as to the "venue" of "litigation," it does not expressly forbid arbitration as an alternative form of dispute resolution.
Keeping in mind that purportedly inconsistent parts of a contract should be reconciled, Sullivan, Long, & Hagerty, supra, and reading both the forum-selection clause and the arbitration clause together (and the contract as a whole), the two clauses can be read consistently to express a preference for the venue of litigation of any disputes that are to be resolved outside arbitration. Personal Security, supra; Bank Julius Baer & Co., supra.[7] Thus, these clauses do not conflict.

D.
Gulf Coast also argues that it did not assent to the arbitration provision because the terms-and-conditions document was not attached to the contract when it was signed. Gulf Coast offered in opposition to the motion to compel arbitration the affidavit of Sanford Brass, the manager of Gulf Coast. Brass testified in the affidavit:
"The Construction Contract that I signed on behalf of [Gulf Coast] for construction of the methanol tanks did not have any attachments or any Terms and Conditions attached to it as part of any attachment at the time I executed it. Further, I never received any Terms and Conditions at any time with regard to any proposal, even though as General Manager it is required that I approve *528 any terms and conditions which relate to this contract."
(Emphasis omitted.) Advance Tank, on the other hand, argues that Brass's affidavit indicates that he executed the contract without reading Attachment D, which constituted pages 17 through 20 of the contract. Brass also stated in his affidavit: "I only received Attachments B, C, and D (without any terms and conditions), after the signing of the Construction Contract. . . ." Advance Tank argues that Gulf Coast's failure to read the contract "cannot be used against Advance Tank."
A party to a contract is responsible for reading the contract. See Ex parte Perry, 744 So.2d 859, 863 (Ala. 1999) (opinion of three Justices). "[W]hen a competent adult, having the ability to read and understand an instrument, signs a contract, he will be held to be on notice of all the provisions contained in that contract, including an arbitration provision, and will be bound thereby." First Family Fin. Servs., Inc. v. Rogers, 736 So.2d 553, 558 (Ala.1999).
Attachment D was part of the contract signed by Gulf Coast. It specifically incorporated by reference Advance Tank's "Terms and Conditions," which contained an arbitration provision. Brass claims that he never saw or read the "Terms and Conditions," yet he nevertheless executed the contract. Moreover, his own affidavit establishes that he had not seen Attachments B, C, and D when the contract was executed, even though the contract explicitly includes those documents as part of its terms. The "Terms and Conditions" were incorporated as part of the contract, and Gulf Coast was deemed to be on notice of all of the provisions of the contract. Thus, Gulf Coast is also bound by the arbitration provision.

E.
Finally, Gulf Coast notes that construction contracts such as the one at issue in this case often incorporate by reference numerous drawings, material lists, insurance certificates, and "a host" of rules and regulations. Gulf Coast suggests that such contracts create opportunities for parties to "slip" arbitration clauses into preliminary bid documents, where they would go unnoticed. Gulf Coast thus suggests:
"The obvious answer is that in the context of complex construction contracts negotiated specifically by the parties for a substantial project such as here, the burden rests with the party desiring arbitration . . . to make certain that the party against whom the arbitration clause may be enforced is aware of the arbitration provision before the parties sign a contract, if that clause does not appear in the body of the document that the parties execute."
Gulf Coast's brief at 52-53.
Gulf Coast's argument would essentially require a special disclosure for an arbitration provision. "Courts may not, however, invalidate arbitration agreements under state laws applicable only to arbitration provisions. . . . Congress [has] precluded States from singling out arbitration provisions for suspect status, requiring instead that such provisions be placed `upon the same footing as other contracts.'" Doctor's Assocs., Inc. v. Casarotto, 517 U.S. 681, 687, 116 S.Ct. 1652, 134 L.Ed.2d 902 (1996) (quoting Scherk v. Alberto-Culver Co., 417 U.S. 506, 511, 94 S.Ct. 2449, 41 L.Ed.2d 270 (1974)). Additionally, this Court has generally recognized that there is no duty to expressly disclose the existence of an arbitration provision. See Anderson v. Ashby, 873 So.2d 168, 183 (Ala.2003); Johnnie's Homes, Inc. v. Holt, *529 790 So.2d 956, 960 (Ala.2001). Thus, this argument is without merit.

Conclusion
Advance Tank has demonstrated that the contract in this case called for arbitration of "all disputes" between Advance Tank and Gulf Coast. Therefore, we hold that the trial court erred in denying the motion to compel arbitration, and the trial court's order is reversed and the cause remanded for proceedings consistent with this opinion.
REVERSED AND REMANDED.
NABERS, C.J., and SEE, LYONS, WOODALL, STUART, BOLIN, and PARKER, JJ., concur.
HARWOOD, J., concurs specially.
HARWOOD, Justice (concurring specially).
I concur. The "Conflicts in Documents" section of the contract is not applicable where there are reasonably viable, mutually exclusive, fields of operation for two provisions. Here, the "Governing LawVenueService of Process" section of the contract does not direct or mandate that any dispute must proceed to litigation. In fact, it purports only to bind Advance Tank, not equally Gulf Coast, and only to the extent that Advance Tank agrees (1) that jurisdiction may be exercised over it by the courts of Mobile County, Alabama, "in any action to enforce any provisions" of the contract; (2) that "venue for any litigation" under or relating to the contract shall be in Mobile County; and (3) that service of process may be effected on it wherever it may be found as if it had been personally served in Alabama.
As some of the perils of arbitration have become better known empirically and likewise the severely restricted grounds for judicial review of an arbitration award at the trial court and appellate court levels better appreciated, it can be expected that sometimes both parties to a contract containing an arbitration clause will elect to forgo invoking it and choose instead the better established and more systematized process of court action. In such a situation, a contract provision binding a party to certain jurisdiction, venue, and mode of service of process for the "action" or "litigation" that ensues will come into play. This possible application of such a provision, as well as the other opportunities for court intervention if a party invokes the arbitration provision, which the main opinion discusses, prevent a true and irreconcilable conflict between the provisions. Thus, there is no need to resort to the "Conflicts in Documents" provision of the contract to resolve the interaction of the forum-selection provision and the arbitration provision.
NOTES
[1] Although the body of the contract indicates Attachment B is "Reserved," Attachment B consists of two pages titled "Asphalt Tank Specifications."
[2] According to the record, Summit Terminaling Services, L.L.C., is a consultant to Gulf Coast.
[3] It was not disputed before the trial court and it is not disputed on appealthat the contract at issue evidenced a transaction involving interstate commerce.
[4] This bid specification does not appear in the record, and nothing in the record actually contains the specifications for the construction of the methanol tanks.
[5] Attachments B and D contain specifications only for the construction of an asphalt tank. If the contract at issue in this case required only the construction of methanol tanks, as Gulf Coast argues, then it is unclear why the contract incorporates extensive specifications for the construction of an asphalt tank.
[6] Additionally, Gulf Coast argues that Attachment D is simply a specification for the "Work" to be conducted. Part B of section 1 defines "Work" as "attached drawings[,] documents, and specifications." It further states:

"All of the Work will be in accordance with all applicable laws, rules, and regulations, and consistent with the terms hereof; in accordance with the attached specifications incorporated herein by reference, as the same may be modified in writing from time to time; and, in accordance with the following additional attached documents which are incorporated by reference and made a part hereof as follows: [Attachments A, B, C, and D]."
(Emphasis added.) "Work" is thus to be performed "in accordance with" both the "attached specifications" and Attachments A, B, C, and D. This implies that "attached specifications" and Attachment D are two different items. If Attachment D was merely included for its description of certain specifications, then it is unclear why it would be addressed as though it were different from the "attached specifications." This language certainly does not demonstrate that only the portions of Attachment D that contain the tank-construction specificationsbut no other provisions are incorporated as part of the contract.
[7] Other courts have generally held that when an arbitration clause appears to conflict with a forum-selection/choice-of-law clause in a contract with varying language, the contract should be construed in favor of arbitration. See generally the cases cited at Sims v. Clarendon Nat'l Ins. Co., 336 F.Supp.2d 1311, 1319 n. 3 (S.D.Fla.2004).