PARKER, Justice.
These two appeals are from the denial of two motions to compel the arbitration of claims asserted in a single complaint in the Montgomery Circuit Court. The appeals have been consolidated for the purpose of writing one opinion.

Background

Blake Dymond was hired by Joe Hudson Collision Center (“JHCC”) as a painter’s helper, and within days he was moved to the position of painter. He participated with two other painters in a plan under which each painter would receive one-third pay for all hours worked by the three painters, but when Dymond returned irom a two-day leave, the compensation method had been modified so that each painter was paid a commission for each job he completed. Dymond allegedly spoke to Kenneth Stringfellow, his immediate supervisor, to complain that the new payment method was unfair to him and that he was not being assigned jobs. String-fellow responded that Dymond worked more slowly than the others and that the earlier compensation method unfairly penalized the other two painters. Dymond alleges that on or about August 6, 2004, Stringfellow assaulted him when he attempted to bring the matter to the attention of Stringfellow’s supervisor.
On August 4, 2006, Dymond filed an action in the Montgomery Circuit Court, naming as defendants Stringfellow, in his individual capacity; JHCC; Joe Hudson, as an owner and operator of JHCC; Traw-eek Dickson,[1] as an owner and operator of JHCC; and fictitiously named defendants. *707 He claimed that Stringfellow committed an assault and battery against him; that JHCC, Hudson, and Dickson (“the JHCC appellants”) were vicariously liable under the theory of respondeat superior and were negligent and/or wanton in their hiring, training, and supervision of String-fellow; and that all defendants were guilty of the tort of outrage.
Stringfellow and the JHCC appellants each filed a motion to compel arbitration under an agreement that was part of an “employment-dispute-resolution program,” which Dymond and Dickson signed on May 24, 2004[2] (“the agreement”). In their motion, the JHCC appellants averred that “[b]y executing the [agreement], ... Dy-mond agreed to participate in a dispute-resolution program which compels that all disputes involving matters directly or indirectly related to his employment ... be resolved through binding arbitration pursuant to the American Arbitration Association ‘National Rules for the Resolution of Employment Disputes.’ ” The agreement reads, in pertinent part, as follows:
“A. INTRODUCTION
“Please take time to read the following material. IT APPLIES TO YOU. It will govern all future legal disputes between you and [JHCC]....
“Effective July 15, 2008, all employee disputes will be referred for resolution through the JHCC Dispute Resolution Program (the ‘Program’)....
“This Program is binding on all employees .... Except as expressly provided below, this Program precludes an employee and JHCC from going to court to have disputes heard by a judge or a jury.
[[Image here]]
“B. SCOPE OF PROGRAM
“This [Program] covers all matters directly or indirectly related to your ... employment including, but not limited to, claims involving discrimination, harassment, or retaliation, whether brought under federal, state, of local laws. Except as provided in the following paragraph neither the employee nor JHCC may initiate or prosecute any lawsuit or action in any way related to any dispute covered by this Program.
“Excluded ... are employees claims for workers’ compensation benefits (except that retaliation claims must be arbitrated) or unemployment compensation. Also excluded ... are claims by JHCC for injunctions or other types of injunc-tive relief for unfair competition [and for the protection of trade secrets, confidential information, and restrictive covenants]. Moreover, nothing contained [herein shall be construed as] prohibiting an employee or JHCC from filing an administrative charge of discrimination or an unfair labor practice charge, or from reporting alleged violations of the law to the Equal Employment Opportunity Commission, the National Labor Relations Board, or any other governmental agency acting pursuant to federal or state law.
“Arbitration under this Program may be used to resolve only those disputes that would constitute a legal cause of action in a court of law. This Program is intended to substitute final and binding arbitration for going to court.... Arbitration must be initiated within the applicable statute of limitation.
[[Image here]]
“D. THE ARBITRATION PROCEDURE
*708 “Unless otherwise agreed by the parties, any arbitration under this Program shall be in accordance with the [American Arbitration Association’s] National Rules for the Resolution of Employment Disputes.... The Arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve any dispute relating to the inter-pi'etation, applicability, enforceability, formation, or scope of this Progi’am, including but not limited to any claim that all or any part of this Progi’am is void or voidable.
[[Image here]]
“F. JUDICIAL REVIEW
“Either party may bring an action in any proper court to require arbitration ... and to enforce an arbitration award. A party opposing enforcement of an award may not do so in an enforcement proceeding but must bring a separate action in any court of competent jurisdiction to set aside the award where the scope of review will be that established by the Federal Arbitration Act.
“G. GENERAL
“1. Interstate Commerce. By ... becoming or remaining employed with JHCC, you agree that JHCC engages in transactions involving interstate commerce and that your employment involves such commerce.
“2. Requirements for Modification or Revocation. This Program shall survive the termination of employment and shall apply to all disputes whether they arise or are asserted before, during, or after termination of employment with JHCC.
“3. Severability. If any portion or provision of this Program is found to be invalid or unenforceable in any respect, the remainder of the Program will remain in full force and effect.”
(Capitalization in original.)
In them brief on appeal the JHCC appellants present Dickson’s affidavit, in which he stated, in support of the motion to compel arbitration, that the business of JHCC both involves, and has a significant nexus with, interstate commerce. Also, as quoted above, section G of the agreement states that Dymond’s employment involves interstate commerce. Stringfellow quoted in his motion to compel arbitration that part of the agreement that says that the agreement “ ‘covers all matters directly or indirectly related to [the employee’s] recruitment, employment, terms and conditions of employment, including, but not limited to, claims involving ... harassment.’ ”
Dymond filed an objection on October 19, 2006, to the JHCC appellants’ motion to compel arbitration, arguing that his employment at JHCC did not involve interstate commerce, that he was rushed when he signed the agreement and did not understand the implications of the agreement, which were hot explained to him, and that he was told that he would not be paid until he signed the agreement.
In his motion to compel arbitration, Stringfellow adopted the motion of the JHCC appellants. He also asserted in the motion, as he does in his brief on appeal, that although he was not a signatory to the agreement, he is a third-party beneficiary of the agreement. Stringfellow also asserts in his motion and appellate brief that, because the claims against him are so closely related to the claims against the JHCC appellants, Dymond is equitably es-topped from denying the arbitrability of the claims against him. Because we find, as discussed below, that Stringfellow may compel arbitration of the claims against him, we do not reach these assertions.
*709 The trial court held a hearing on January 23, 2007, at which the arguments regarding the motions to compel arbitration were presented.[3] The trial court determined that the agreement did not require arbitration of the dispute. The order of the trial court denying both motions to compel arbitration reads:
“This matter came before the Court on January 23, 2007 for a hearing on Motions to Stay/Compel Arbitration filed by Defendants Joe Hudson Collision Center, Joe Hudson, [Traweek Dickson], and Kenneth Stringfellow. Upon consideration of these motions, this Court is of the opinion that said motions are due to be DENIED.
“Therefore, it is hereby ORDERED that the Motions to Stay/Compel Arbitration filed by all defendants are DENIED, which order is a FINAL order of this Court on the issue.
“DONE and ORDERED this 26th day of Jan, 2007.”
(Capitalization in original.) The JHCC appellants and Stringfellow appeal. Dymond did not file an appellee’s brief.

Issues Presented on Appeal

The JHCC appellants present three issues for resolution by this Court. The JHCC appellants allege that the trial court erred when it denied their motion to compel arbitration on the basis that the agreement did not encompass the disputes here. The JHCC appellants next contend that Dymond offered insufficient evidence that the agreement is invalid or inapplicable, because, they say, Dymond failed of meet his burden under Polaris Sales, Inc. v. Heritage Imports, Inc., 879 So.2d 1129 (Ala.2003), requiring the party opposing arbitration to present evidence indicating that the arbitration agreement was either invalid or inapplicable to the dispute in question. Finally, they also argued that, by incorporating the rules of the American Arbitration Association (“the AAA”) into the agreement, the JHCC appellants and Dymond agreed that the issue of arbitra-bility of disputes would be decided by an arbitrator.
Stringfellow presents one issue on appeal:
“Whether the trial court committed reversible error in denying Stringfellow’s Motion to Compel Arbitration where the arbitration agreement at issue encompasses ‘all matters directly or indirectly related’ to [Dymond’s] employment, and [Dymond’s] claims arose out of a dispute with his former manager regarding compensation.”
Stringfellow’s brief, at 4.

Standard of Revieio

“[T]he review applied to a trial court’s ruling on a motion to compel arbitration at the instance of either party is a de novo determination of whether the trial judge erred on a factual or legal issue to the substantial prejudice of the party seeking review. Ex parte Roberson, 749 So.2d 441 (Ala.1999).”
Brown v. Dewitt, Inc., 808 So.2d 11, 13 (Ala.2001).
“Initially, the party seeking to compel arbitration has the burden of proving the existence of a contract calling for arbitration and proving that that contract evidences a transaction involving interstate commerce. Polaris Sales, *710 Inc. v. Heritage Imports, Inc., 879 So.2d 1129, 1132 (Ala.2003). The moving party ‘must “ ‘produce some evidence which tends to establish its claim.’ ” ’ Wolff Motor Co. v. White, 869 So.2d 1129, 1131 (Ala.2003)(quoting Jim Burke Auto., Inc. v. Beavers, 674 So.2d 1260, 1265 (Ala.1995), quoting in turn In re American Freight Sys., Inc., 164 B.R. 341, 345 (D.Kan.1994)). Once the moving party has properly supported his or her motion to compel arbitration, the burden then shifts to the nonmovant to present evidence tending to show that the arbitration agreement is invalid or inapplicable to the case. Polaris Sales, 879 So.2d at 1132.”
Edwards v. Costner, 979 So.2d 757, 761 (Ala.2007).
Furthermore, “[t]he [Federal] Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.... ” Moses H. Cone Mem’l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983).

Analysis

Case No. 1060809—The JHCC Appellants

The JHCC appellants contend that the trial court erred when it denied their motion to compel arbitration on the basis that the agreement did not encompass this dispute. The JHCC appellants argue that by incorporating the AAA rules into the agreement, the parties agreed that the issue of arbitrability of any dispute would be decided by an arbitrator. We agree.
Section D of the agreement incorporates the AAA National Rules for the Resolution of Employment Disputes. Rule 8(a) of the AAA National Rules provides that the arbitrator “shall have the power to rule on his or her own jurisdiction, including any objections, with respect to the existence, scope, or validity of the arbitration agreement.” JHCC appellants’ brief, at 27. “[A]n arbitration provision that incorporates rules that provide for the arbitrator to decide issues of arbitrability clearly and unmistakably evidences the parties’ intent to arbitrate the scope of the arbitration provision. CitiFinancial Corp., L.L.C. v. Peoples, [973 So.2d 332, 340, (Ala.2007) ].” JHCC appellants’ brief, at 27.
Moreover, there are two provisions in the agreement, which Dymond signed, that defined the authority of the arbitrator and the scope of the agreement. The agreement, in section D, specifically states that the “Arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve any dispute relating to the ... applicability, or scope of this Program....” In section B, the parties agreed that the agreement “covers all matters directly of indirectly related to [the] ... employment, including ... claims involving discrimination, harassment, or retaliation.”
In response to Dymond’s claim that his employment at JHCC did not involve interstate commerce, the JHCC appellants cite Wolff Motor Co. v. White, 869 So.2d 1129 (Ala.2003), for the proposition that “ ‘[t]he automobile, if anything, is the paradigm of modern interstate commercial activity ... [and that] “cars themselves are instrumentalities of commerce,” ’ ” such that JHCC’s operation of “numerous businesses within Alabama and an additional location in the state of Florida,” all of which receive parts and equipment in interstate commerce, indicates, “without question that the business of [JHCC] and the plaintiffs employment at one of the locations ... affected interstate commerce” and “the employment relationship and all legal disputes arising therefrom” *711 are governed by the agreement. JHCC appellants’ brief, at 21-22. In addition, Dickson, as president of JHCC, submitted his affidavit to the trial court stating that the “business of [JHCC] involves and affects interstate commerce and has a significant nexus with interstate commerce in its day-to-day operations.” We agree that JHCC is engaged in interstate commerce, that Dymond’s employment there involves interstate commerce, and that the agreement applies to Dymond.
The JHCC appellants respond to Dymond’s claim that the agreement was never explained to him, stating that although Dymond’s allegation is totally unsupported by any evidence,
“[t]he law is well settled that:
“ ‘A party to a contract is responsible for reading the contract. See Ex parte Perry, 744 So.2d 859, 863 (Ala. 1999) (opinion of three Justices). “[W]hen a competent adult, having the ability to read and understand an instrument, signs a contract, he will be held to be on notice of all the provisions contained in that contract, including an arbitration provision, and will be bound thereby.” First Family Fin. Servs., Inc. v. Rogers, 736 So.2d 553, 558 (Ala.1999).’
“Advance Tank and Construction Company, Inc. v. Gulf Coast Asphalt Company, L.L.C., [968 So.2d 520, 528 (Ala. 2006).]”
JHCC appellants’ brief, at 22. Thus, it is immaterial whether the agreement was explained to Dymond. As a competent and literate adult, he is responsible for the contracts that he makes. Advance Tank & Constr. Co. v. Gulf Coast Asphalt Co., 968 So.2d 520 (Ala.2006).
This Court recently reiterated its recognition of the strong federal policy favoring arbitration.
“The United States Supreme Court recognizes a strong federal policy favoring arbitration:
“ ‘The [Federal] Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability.’
“Moses H. Cone Mem’l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983) (footnote omitted).”
Ex parte Johnson, 993 So.2d 875, 885 (Ala. 2008). Because the agreement, which was mutually executed, unambiguously stated that the arbitrator, and not any court or agency, would have exclusive authority to resolve any dispute concerning the applicability and scope of the agreement, the trial court erred when it denied the JHCC appellants’ motion to compel arbitration. Accordingly, the judgment of the trial court denying the JHCC appellants’ motion to compel arbitration is reversed.
Case No. 1060856 — Stringfellow
Stringfellow, a nonsignatory to the agreement he seeks to enforce, argues that the claims against him are so closely related with those asserted against the JHCC appellants that Dymond is equitably es-topped from denying the arbitrability of the claims against him. Moreover, String-fellow argues that he is a third-party beneficiary of the agreement and that he is entitled to the benefit of the agreement. We need not reach Stringfellow’s assertions, however, because he is entitled to compel Dymond to arbitrate his claims against Stringfellow.
In count 5 of his complaint, Dymond stated that “at the time of the incident ... *712 Stringfellow was acting in the line and scope of his employment. He was acting in the capacity of assistant manager [in the service] of the ‘Center,’ Hudson and [Dickson].” The claims filed against the other defendants are intimately founded in the same incident. In his objection to the motions to compel arbitration, Dymond did not challenge Stringfellow’s standing to seek arbitration.
As this Court has previously stated: “[An] employee[] of a signatory to the contractf] ha[s] standing to enforce the arbitration provision.” Ex parte Rush, 730 So.2d 1175, 1177 n. 2 (Ala.1999). Because Stringfellow has standing to compel arbitration, the order of the trial court denying Stringfellow’s motion to compel arbitration is in error and must be reversed.

Conclusion

Case No. 1060809 — The JHCC Appellants
The determination of the arbitrability of this dispute is a question reserved for an arbitrator under the agreement. Thus, the ruling of the trial court was in error. Therefore, we reverse the judgment of the trial court, and we remand the case with directions to grant the motion of the JHCC appellants to stay the proceedings in the trial court and to compel arbitration.
Case No. 1060856 — Stringfellow
As an employee of JHCC, Stringfellow is entitled to compel Dymond to arbitrate the claims against him. Accordingly, we reverse the judgment of the trial court, and we remand the case with directions to grant the motion to stay the proceedings in the trial court and to compel arbitration.
1060809 — REVERSED AND REMANDED WITH DIRECTIONS.
1060856 — REVERSED AND REMANDED WITH DIRECTIONS.
STUART, SMITH, BOLIN, and SHAW, JJ., concur.
COBB, C.J., and LYONS and WOODALL, JJ., concur specially.

. In the complaint and in places in the record Dickson is referred to as “Dixon.”

. The document bears a date of "5/24/05," but Dickson has provided his sworn affidavit stating that it was executed on the day Dymond began work at JHCC, May 24, 2004.

. The trial court also heard argument on a motion by Alfa Mutual Insurance Company to intervene in the case. Alfa sought a judgment declaring its liability to cover Stringfellow under his homeowner’s liability policy for the claims asserted against him by Dymond. Alfa's action, however, has no bearing on the issue before this Court, i.e., whether the motions to compel arbitration should have been granted.