976 So.2d 12 (2008)
Juan Pablo LARRAIN and Maria Cecilia Sotomayor, Appellants,
v.
BENGAL MOTOR CO. LTD., American Honda Service Contract Corporation, Bank of America Corporation, and AutoNation, Inc., Appellees.
No. 3D07-132.
District Court of Appeal of Florida, Third District.
January 23, 2008.
Rehearing and Rehearing Denied March 27, 2008.
*13 Consumer Legal Services and Aldo Bolliger and Kenneth W. Lockwood and Kurt D. Mitchell, Tampa, for appellants.
Bunnell Woulfe Kirschbaum Keller McIntyre Gregoire & Klein and Nancy W. Gregoire, Fort Lauderdale; Richard A. Ivers, Coral Springs, for appellees.
Before GREEN, SHEPHERD, and CORTIÑAS, JJ.
Rehearing and Rehearing En Banc Denied March 27, 2008.
CORTIÑAS, Judge.
Juan Pablo Larrain and Maria Cecilia Sotomayor (the "Purchasers") appeal from a non-final order granting Motions to Stay Litigation Pending Arbitration or, in the alternative, Motions to Dismiss Amended Complaint ("Arbitration Motions") in favor of Bengal Motor Co. Ltd. and AutoNation, Inc.[1] (collectively the "Dealers").
On November 17, 2005, the Purchasers bought a used 2001 Ford Expedition from Bengal Motor Co. Ltd. d/b/a Maroone Honda ("Bengal") and received a sixty-day (60) 2000-mile Limited Warranty, which required that, whenever possible, warranty repairs be made by Bengal. Additionally, Juan Pablo Larrain and Bengal signed a stand-alone arbitration agreement ("Arbitration Agreement") which indicated that arbitration would "be the sole method of resolving any claim, dispute, or controversy. . . ." that may arise between the Purchaser and Bengal or any claim resulting from a "relationship with third parties who do not sign this [Arbitration] Agreement that arises out of the [Purchaser(s)/Bengal] Dealings." During the warranty period, the Purchasers unsuccessfully attempted to have the vehicle repaired. In January 2006, the Purchasers filed a complaint alleging that the vehicle was defective and that Bengal was in violation of express and implied warranties pursuant *14 to the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301-2312 (2006) ("MMWA"). In July 2006, the Dealers filed their Arbitration Motions, which were granted by the circuit court. The Purchasers' appeal followed.
The MMWA was enacted "to improve the adequacy of information available to consumers, prevent deception, and improve competition in the marketing of consumer products. . . ." 15 U.S.C. § 2302(a) (2006). It was implemented to combat "an increasing number of consumer complaints regarding the inadequacy of warranties on consumer goods." Davis v. S. Energy Homes, Inc., 305 F.3d 1268, 1272 (11th Cir.2002). Thus, the Federal Trade Commission ("FTC") enacted the single document rule, which requires that the terms and conditions of the written warranty be "fully and conspicuously disclose[d] in simple and readily understood language. . . ." 15 U.S.C. § 2302(a) (2006).
The single document rule was promulgated by the FTC through authority delegated to it by Congress in the MMWA. 15 U.S.C. section 2302(a)(8) indicates Congress' desire that the FTC include in their regulations, "[i]nformation respecting the availability of any informal dispute settlement procedure offered by the warrantor and a recital, where the warranty so provides, that the purchaser may be required to resort to such procedure before pursuing any legal remedies in the courts."[2] Based on this delegation by Congress, the FTC expressed the single document rule in the following language: a warrantor shall "clearly and conspicuously disclose in a single document in simple and readily understood language: . . . (6) Information respecting the availability of any informal dispute settlement mechanism elected by the warrantor in compliance with part 703 of this subchapter." 16 C.F.R. § 701.3(a)(6) (2005).
The disclosure requirements set forth by the FTC are central to the purposes of the MMWA. By not disclosing material terms, such as an arbitration agreement, within the written warranty we would be promoting confusion and complexity to warranties, which the MMWA was designed to avoid. "The single document rule . . . [requires] warrantors to present all information relevant to the warranty in one place, where it might be easily located and assimilated by the consumer." Cunningham v. Fleetwood Homes of Ga., Inc., 253 F.3d 611, 621 (11th Cir.2001).
After reviewing the MMWA and the FTC regulations, we find that the clear language of the MMWA expresses Congress' intent that any arbitration agreement must be disclosed within the written warranty and not as a stand-alone document. Accordingly, we reverse the order granting the Dealers' Arbitration Motions *15 and remand for further proceeding consistent with this opinion.
We express no opinion on whether arbitration agreements are enforceable in conjunction with a MMWA claim. Compare Davis, 305 F.3d at 1272 (indicating that the MMWA permits the enforcement of binding arbitration agreements that are contained within the written warranty), and Walton v. Rose Mobile Homes LLC, 298 F.3d 470, 475-76 (5th Cir.2002) (finding that analysis of the MMWA's text, legislative history, and purpose indicates that compulsory arbitration of MMWA claims is permissible), with Koons Ford v. Lobach, 398 Md. 38, 919 A.2d 722, 731 (2007) (stating that Congress expressed its intent to preclude the use of binding arbitration agreements in the resolution of MMWA claims).
Reversed and remanded.
GREEN, J., concurs.
SHEPHERD, J., dissenting.
I respectfully dissent on the strength of Patriot Manufacturing, Inc. v. Jackson, 929 So.2d 997 (Ala.2005), in which the Alabama Supreme Court decocts and persuasively articulates the flaws in Cunningham v. Fleetwood Homes of Georgia, Inc., 253 F.3d 611 (11th Cir.2001), upon which the majority here exclusively relies. Finding myself unable to improve upon the reasoning and language of the Patriot Manufacturing court, and hopefully with its indulgence, I adopt, as my dissent, the reasoning and language of that decision, which perplexingly was not brought to the attention of this Court until the eve of oral argument.
NOTES
[1] The Purchasers alleged that AutoNation, Inc., as an affiliate of Bengal, was in violation of the Federal Debt Collection Practices Act and Florida's Consumer Collection Statute.
[2] When construing a statute, a court should apply the analysis set forth in Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 842-43, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984).

"First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress. If, however, the court determines Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute."
Chevron, 467 U.S. at 842-43, 104 S.Ct. 2778 (footnotes omitted).