Opinion by Judge REINHARDT; Dissent by Judge N.R. SMITH.
OPINION
REINHARDT, Circuit Judge:
Diana Kolev brought suit against Euro-motors West/The Auto Gallery, Motorcars West LLC, HM Gray Family II Inc., Gray Family II LLC, Bennett Automotive I Inc., Bennett Automotive II Inc. (“the Dealership”) and Porsche Cars North America, Inc. (“Porsche”), when the preowned (formerly known as “used”) automobile that she purchased from the Dealership developed serious mechanical problems during the warranty period and the Dealership refused to honor her warranty claims. She alleges breach of implied' and express warranties under the MagnusonMoss Warranty Act (“MMWA”), and breach of contract and unconseionability under California law.
The district court granted the Dealership’s petition to compel arbitration pursuant to the mandatory arbitration provision in the sales contract that Kolev signed when she bought the car. It also stayed the action against Porsche. After the arbitrator resolved most of the claims in favor of the Dealership, the district court confirmed the arbitration award. We review de novo the district court’s order granting the petition to compel arbitration. See Davis v. O’Melveny & Myers, 485 F.3d 1066, 1072 (9th Cir.2007).
Kolev’s principal argument on appeal is that the Magnuson-Moss Warranty Act (“MMWA”), 15 U.S.C. § 2301 et seq. (2000), bars the provision mandating predispute binding arbitration of her warranty claims against the Dealership. Although the text of the MMWA does not specifically address the validity of pre-dispute mandatory binding arbitration, Congress expressly delegated rulemaking authority under the statute to the Federal Trade Commission (“FTC”). See 15 U.S.C. § 2310(a)(2). Pursuant to this authority, the FTC construed the MMWA as barring pre-dispute mandatory binding arbitration provisions • covering written warranty agreements and issued a rule prohibiting judicial enforcement of such provisions with respect to consumer claims brought under the MMWA. See 16 C.F.R. § 703.5; 40 Fed.Reg. 60167, 60210 (Dec. 31, 1975).
We apply a two-step inquiry in reviewing agency constructions of statutes. See Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). The first step requires us to ask whether Congress has “directly spoken to the precise question at issue” in a way that renders its intention “clear” and “unambiguously expressed.” Id. at 842-44, 104 S.Ct. 2778. If we find that the “statute is silent or ambiguous with respect to the specific issue,” then we proceed to the second step, and ask whether an interpretation by the agency to which Congress has delegated *1026 rulemaking authority “is based on a permissible construction of the statute.” Id. at 843, 104 S.Ct. 2778. If Congress’ intent is not clear under the statute and if “Congress delegated authority to the agency generally to make rules carrying the force of law, and [] the agency interpretation claiming deference was promulgated in the exercise of that authority,” United States v. Mead Corp., 533 U.S. 218, 226-27, 121 S.Ct. 2164, 150 L.Ed.2d 292 (2001), then we must defer to the agency’s reasonable construction of the ambiguous statutory provision.[1]
“Under the first prong of Chevron, we use traditional tools of statutory construction to determine whether Congress expressed a clear intent on the issue in question.” Schneider v. Chertoff, 450 F.3d 944, 953 (9th Cir.2006) (internal citations omitted). We agree with the Fifth Circuit that “[t]he text of the MMWA does not specifically address binding arbitration,” Walton v. Rose Mobile Homes LLC, 298 F.3d 470, 475 (5th Cir.2002); see also Davis v. S. Energy Homes, Inc., 305 F.3d 1268, 1278 (11th Cir.2002) (“Congress failed to directly address binding arbitration anywhere in the text ... of the MMWA.”), and conclude that Congress has not “directly spoken to the precise question,” Chevron, 467 U.S. at 842, 104 S.Ct. 2778, whether the MMWA bars warranty provisions that mandate pre-dispute binding arbitration of warranty claims.
Accordingly, we proceed to the second prong of the Chevron inquiry, under which we ask whether the agency to which Congress delegated rulemaking authority resolved the statutory ambiguity based on a permissible construction of the statute. 467 U.S. at 843, 104 S.Ct. 2778. In enacting the MMWA, Congress expressly delegated authority to the FTC to “prescribe rules setting forth minimum requirements for any informal dispute settlement procedure which is incorporated into the terms of a written warranty.” 15 U.S.C. § 2310(a)(2). Pursuant to this authority, the FTC promulgated Rule 703, which provides that “[decisions of [any] Mechanism shall not be legally binding on any person,” 16 C.F.R. § 703.5(j), defining a “Mechanism” as an “informal dispute settlement procedure which is incorporated into the terms of a written warranty.” § 703.1(e). If a consumer “is dissatisfied with [a Mechanism’s] decision or warrantor’s intended actions, or eventual performance,” the Rule states, then “legal remedies, including use of small claims court, may be pursued.” § 703.5(g).
When it published Rule 703, the FTC explained:
Several industry representatives contended that warrantors should be allowed to require consumers to resort to mechanisms whose decisions would be legally binding (e.g., binding arbitration). The Rule does not allow this for two reasons. First, as the Staff Report indicates, Congressional intent was that decisions of Section 110 Mechanisms [4] not be legally binding. Second, even if binding mechanisms were contemplated by Section 110 of the Act, the [FTC] is not prepared, at this point in time, to develop guidelines for a system in which consumers would commit themselves, at the time of product purchase, to resolve any difficulties in a binding, but non *1027 judicial, proceeding. The [FTC] is not now convinced that any guidelines which it set out could ensure sufficient protection for consumers.
40 Fed.Reg. 60167, 60210 (Dec. 31, 1975). The FTC’s explanation concluded that “reference within the written warranty to any binding, non-judicial remedy is prohibited by the Rule and the Act.” Id. at 60211.[2] In 1999, the FTC restated its position that mandatory pre-dispute binding arbitration clauses are invalid under the MMWA and affirmed that “this interpretation continues to be correct.” 64 Fed.Reg. 19700, 19708 (Apr. 22, 1999). Expressly declining to amend 16 C.F.R. § 703.5(j) to permit binding arbitration, the FTC concluded that “Rule 703 will continue to prohibit warrantors from including binding arbitration clauses in their contracts with consumers that would require consumers to submit warranty disputes to binding arbitration.” Id. at 19708-09.
There are three reasons why the FTC’s interpretation of the MMWA as precluding pre-dispute mandatory binding arbitration is a reasonable construction of the statute. First, the FTC sought in devising Rule 703 to implement Congress’s intent, based on evidence from the legislative history of the MMWA. Specifically, in its Statement of Basis and Purpose for Rule 703, the FTC cited to the House Subcommittee Staff Report as evidence that “[congressional intent was that decisions of Section 110 Mechanisms not be legally binding.” 40 Fed.Reg. at 60210. The Subcommittee Staff Report on which the FTC based its independent interpretation of Congress’s intention makes clear that consumers must be made aware of their rights, including their right to pursue litigation, because otherwise “the fate of aggrieved consumers usually rests with the seller/manufacturer and its willingness to live up to its promises.” 120 Cong. Rec. 31,318 (1974). The FTC’s reliance on such legislative history in seeking to implement Congress’s intent is the first reason that its rule barring judicial enforcement of pre-dispute mandatory binding arbitration agreements is a reasonable construction of the MMWA.
Second, the FTC’s interpretation that the MMWA bars pre-dispute mandatory binding arbitration advances the statute’s purpose of protecting consumers from being forced into involuntary agreements that they cannot negotiate. In enacting the MMWA, Congress sought to address the extreme inequality in bargaining power that vendors wielded over consumers by “providing consumers with access to reasonable and effective remedies” for breaches of warranty, and by “providing] the Federal Trade Commission (FTC) with means of better protecting consumers.” H.R.Rep. No. 93-1107, at 24 (1974), reprinted in 1974 U.S.C.C.A.N. 7702, 7702. The FTC, however, was “not ... convinced that any guidelines which it set out *1028 could ensure sufficient protection for consumers.” 40 Fed.Reg. at 60211. Most important, the agency construed the statute as prohibiting vendors from including provisions that mandate arbitration of disputes over breaches of warranty before a dispute arises, in order to prevent them from depriving consumers of the right that it guaranteed them to litigate breaches of warranty. See H.R.Rep. No. 93-1107, at 41, 1974 U.S.C.C.A.N. at 7723 (“An adverse decision in any informal dispute settlement proceeding would not be a bar to a civil action on the warranty involved in the proceeding.”).
Third, we “should accord particular deference to the FTC’s regulatory interpretation of the MMWA because the regulations represent a longstanding, consistent interpretation of the statute.” Walton, 298 F.3d at 490 (King, C.J., dissenting). The Supreme Court has made clear that “a court may accord great weight to the longstanding interpretation placed on a statute by an agency charged with its administration,” NLRB v. Bell Aerospace Co. Div. Textron Inc., 416 U.S. 267, 274-75, 94 S.Ct. 1757, 40 L.Ed.2d 134 (1974), because “agency interpretations that are of long standing come before us with a certain credential of reasonableness, since it is rare that error would long persist.” Smiley v. Citibank, 517 U.S. 735, 740, 116 S.Ct. 1730, 135 L.Ed.2d 25 (1996). In this case, the agency’s interpretation of the statute has persisted for more than thirty-five years, ever since in 1975 the FTC promulgated Rule 703 shortly after the enactment of the MMWA. In 1999, the FTC published a regulatory review statement reaffirming its interpretation of the MMWA to preclude pre-dispute mandatory binding arbitration agreements. Although we summarized the FTC’s 1999 statement briefly above, it is worth quoting here at greater length:
The Commission examined the legality and the merits of mandatory binding arbitration clauses in written consumer product warranties when it promulgated Rule 703 in 1975. Although several industry representatives at that time had recommended that the Rule allow warrantors to require consumers to submit to binding arbitration, the Commission rejected that view as being contrary to the Congressional intent.
The Commission based this decision on its analysis of the plain language of the Warranty Act. Section 110(a)(3) of the Warranty Act provides that if a warrantor establishes an informal dispute settlement mechanism that complies with Rule 703' and incorporates that informal dispute settlement mechanism in its written consumer product warranty, then “(t)he consumer may not commence a civil action (other than a class action) ... unless he initially resorts to such procedure.” This language clearly implies that a mechanism’s decision cannot be legally binding, because if it were, it would bar later court action. The House Report supports this interpretation by stating that “(a)n adverse decision in any informal dispute settlement proceeding would not be a bar to a civil action on the warranty involved in the proceeding.” H.R.Rep. No. 93-1107 (1974), at 41 [1974 U.S.C.C.A.N. 7702, 7723].
[T]he Commission determined that “reference within the written warranty to any binding, non-judicial remedy is prohibited by the Rule and the Act.” 40 FR 60168, 60211 (1975). The Commission believes that this interpretation continues to be correct. Therefore, the Commission has determined not to amend § 703.5(j) to allow for binding arbitration. Rule 703 will continue to prohibit warrantors from including binding arbitration clauses in their contracts with consumers that would require consum *1029 ers to submit warranty disputes to binding arbitration.
64 FR 19700-01, 19708-09 (1999) (internal footnotes omitted). That a quarter century passed between the FTC’s initial construction of the MMWA as barring predispute mandatory binding arbitration and its most recent reaffirmation of that conclusion merits that consistent FTC construction of the statute strong deference. Moreover, that Rule and its concomitant construction of the MMWA by the agency charged with the statute’s enforcement remains in effect to this day.
We reject the argument that the FTC’s construction is unreasonable in light of the Supreme Court’s repeated holdings that Congress established a “liberal federal policy favoring arbitration agreements” when in 1924 it enacted the Federal Arbitration Act (“FAA”), fifty-one years before adopting the Magnuson-Moss Warranty Act in 1975. Moses H. Cone Mem’l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983); see also Hall Street Assocs. v. Mattel, Inc., 552 U.S. 576, 581, 128 S.Ct. 1396, 170 L.Ed.2d 254 (2008); Buckeye Check Cashing Inc. v. Cardegna, 546 U.S. 440, 443, 126 S.Ct. 1204, 163 L.Ed.2d 1038 (2006).
The FAA provides in pertinent part that an arbitration agreement “shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.” 9 U.S.C. § 2. The Supreme Court held in Shearson/Am. Express Inc. v. McMahon, 482 U.S. 220, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987), that the FAA’s mandate to enforce arbitration agreements, “[l]ike any statutory directive, may be overridden by a contrary congressional command.” Id. at 226,107 S.Ct. 2332.
The Fifth and Eleventh Circuits relied on McMahon to conclude that the MMWA does not overcome the FAA’s presumption that courts should enforce arbitration agreements. See Walton, 298 F.3d at 478, 474; Davis, 305 F.3d at 1279, 1273. The Eleventh Circuit held that the agency’s rule prohibiting pre-dispute mandatory binding arbitration was an impermissible construction of the statute, Davis, 305 F.3d at 1279, while a Fifth Circuit panel majority, over a vigorous dissent by then-Chief Judge King, Walton, 298 F.3d at 480-92 (King, C.J., dissenting), asserted that it need not even consider the reasonableness of the FTC rule, because Congress, through the FAA’s pro-arbitration presumption enacted nearly a half-century before the MMWA, had “directly spoken to the precise question” whether a warrantor may mandate pre-dispute binding arbitration under the MMWA. Id. at 478 n. 14.
We disagree with the conclusions reached by the Fifth and Eleventh Circuits for three reasons. First, as Chief Judge King noted in dissent, it is unprecedented to locate Congress’s intent with respect to one statute by looking to “a prior, less specific statute.” Id. at 483 (King, C.J., dissenting). Where the directives of two statutes create an apparent conflict, to identify congressional intent in one statute by reference to a previously enacted and more general statute would violate two basic principles of statutory interpretation: first, that later enacted statutes take priority over older ones, and second, that more specific statutes control more general ones. See William N. Eskridge, et al., Legislation and Statutory Interpretation 282-83 (2d ed.2006) (italics omitted). Nor did the Supreme Court purport to settle the question in McMahon, twelve years after the MMWA’s enactment; it stated only that the FAA established a rebuttable presumption in favor of arbitration that Congress could override in any later statute by adopting “a contrary congressional command.” 482 U.S. at 226, 107 S.Ct. 2332. The Fifth Circuit erred in holding that the prior adoption of the FAA was in itself *1030 enough to find that Congress had in the later-enacted MMWA “directly spoken to the precise question” whether pre-dispute mandatory binding arbitration provisions are enforceable under the MMWA. Id. at 478 n. 14,107 S.Ct. 2332.
Second, as we explained above, the FTC reasonably construed the statute’s language, legislative history, and underlying purpose in concluding that “reference within the written warranty to any binding, non-judicial remedy is prohibited by ... the [Magnuson-Moss Warranty] Act.” 40 Fed.Reg. 60167, 60211 (Dec. 31, 1975). With its 1999 regulatory review statement, the FTC again carefully considered its construction of the statute as prohibiting “any binding, non-judicial remedy,” and concluded that “this interpretation continues to be correct.” 64 Fed.Reg. 19700, 19708 (Apr. 22, 1999). It did so with full awareness that the Supreme Court had twelve years earlier in McMahon set forth a rebuttable presumption in favor of enforcing arbitration agreements. We agree with the FTC’s longstanding interpretation of the statute, that it bars judicial enforcement of warranty provisions that mandate pre-dispute binding arbitration and that the MMWA evinces a “contrary.congressional command” sufficient to override the FAA’s presumption in favor of arbitration. McMahon, 482 U.S. at 226, 107 S.Ct. 2332. More important, however, under Chevron, we are bound by it. See 467 U.S. at 842-44,104 S.Ct. 2778.
The third and final reason that the FAA’s proarbitration presumption does not render unreasonable the FTC’s interpretation of the MMWA as barring predispute mandatory binding arbitration is that the 1975 Magnuson-Moss Warranty Act is different in four critical respects from every other federal statute that the Supreme Court has found does not rebut the FAA’s pro-arbitration presumption, including the Sherman Antitrust Act of 1890,[3] the Securities Act of 1933,[4] and the Securities Exchange Act of 1934.[5] First, with respect to these other statutes, in none did an authorized agency construe the statute to bar pre-dispute mandatory binding arbitration. Second, only in the MMWA and in none of these other statutes did Congress say anything about informal, non-judicial remedies, and do so in a way that would bar binding procedures such as mandatory arbitration. See 15 U.S.C. § 2310(a)(2) (authorizing the FTC to “prescribe rules setting forth minimum requirements for any informal dispute settlement procedure which is incorporated into the terms of a written warranty”).
Third, in the MMWA alone did Congress explicitly preserve, in addition to informal dispute settlement mechanisms, a consumer’s right to press his claims under the statute in civil court. See 15 U.S.C. § 2310(a)(3)(C) (requiring a “consumer [to] resort to such [informal dispute settlement] procedure before pursuing any legal remedy” (emphasis added)); id. § 2310(a)(3)(C)(i) (no consumer may “commence a civil action ... unless he initially *1031 resorts to such procedure” (emphasis added)). Fourth, only the MMWA sought as its primary purpose to protect consumers by prohibiting vendors from imposing binding, non-judicial remedies. By contrast, the FAA’s proarbitration policy, the Court made especially clear just last term, is intended to expedite disputes through efficient, dispute-specific procedures and not to advance the interests of consumers. See AT & T Mobility v. Concepcion, 563 U.S. -, -, 131 S.Ct. 1740, 1748, 179 L.Ed.2d 742 (2011) (“The overarching purpose of the FAA, evident in the text of §§ 2, 3, and 4, is to ensure the enforcement of arbitration agreements according to their terms so as to facilitate streamlined proceedings.” (emphasis added)).
In sum, having found that the statute on its face is ambiguous as to whether predispute mandatory binding arbitration provisions are valid under the MMWA, we conclude that the FTC’s construction that they are not is reasonable. We do so for the following reasons: (1) the FTC interpreted the statute consistent with its carefully reasoned understanding of the enacting Congress’s intent, as evidenced by the statute’s language and legislative history; (2) the FTC’s construction advances the MMWA’s purpose to protect consumers from predatory warrantors and to provide them with fair and informal pre-filing procedures that preserve their rights to enforce their claims for breach of warranty through civil litigation in the state or federal courts; and (3) the persistence of the FTC’s rule that the MMWA bars predispute mandatory binding arbitration— expressly reaffirmed more than a decade after the Supreme Court held that the FAA “mandates enforcement of agreements to arbitrate statutory claims” absent “contrary congressional command” — requires that the courts afford the agency’s construction particularly strong deference. Because we are required to defer to the reasonable construction of a statute by the agency that Congress has authorized to interpret it, we hold that the MMWA precludes enforcement of pre-dispute agreements such as Porsche’s that require mandatory binding arbitration of consumer warranty claims.
In view of the conclusion we have reached above, we need not address Kolev’s additional contentions that the arbitration clause was unconscionable under California law and that the district court abused its discretion by admitting and relying on the sales contract authenticated by a principal of the Dealership and by compelling arbitration of her claims against the Dealership while staying the action against Porsche.
We hold that written warranty provisions that mandate pre-dispute binding arbitration are invalid under the MMWA and that the district court therefore erred in enforcing Porsche’s warranty clause by compelling mandatory arbitration of Kolev’s claims. Accordingly, we reverse and remand to the district court as to all breach of warranty claims.
REVERSED AND REMANDED.

. For cases in which the Mead requirements for Chevron deference are not met, we review the agency’s interpretation under the Skid-more standard, whereby the interpretation is “entitled not to deference but to a lesser ‘respect’ based on the persuasiveness of the agency decision.” Wilderness Soc’y v. U.S. Fish & Wildlife Serv., 353 F.3d 1051, 1067 (9th Cir.2003); Skidmore v. Swift & Co., 323 U.S. 134, 139, 65 S.Ct. 161, 89 L.Ed. 124 (1944). We explain for the reasons set forth below why the Mead requirements for Chevron deference are fully satisfied in this case.

 "Section 110 Mechanisms” is a reference to those informal dispute settlement mechanisms authorized by Section 110 of the MMWA, found at 15 U.S.C. § 2310.

. Although the written warranty in this case was not contained within the record, the sales contract included an arbitration clause that mandated pre-dispute binding arbitration and stated that any warranties regarding the vehicle would be located in a, separate written warranty; both parties and the district court assumed that such written warranty existed and that it referred to the arbitration clause. If, however, the mandatory arbitration clause actually appeared only in the sales contract and not also in the written warranty, then it would be even more clearly impermissible. See Cunningham v. Fleetwood Homes of Georgia, Inc., 253 F.3d 611, 622 (11th Cir.2001) ("Compelling arbitration on the basis of an arbitration agreement that is not referenced in the warranty presents an inherent conflict with the [MMWAl's purpose of providing clear and concise warranties to consumers.”).

. See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 625-26, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985) (holding that claims brought under 15 U.S.C. §§ 1-7 are subject to binding arbitration pursuant to the FAA's proarbitration presumption).

. See Rodriguez de Quijas v. Shearson/American Express, Inc., 490 U.S. 477, 486-88, 109 S.Ct. 1917, 104 L.Ed.2d 526 (1989) (holding that claims under 15 U.S.C. §§ 77a-77aa are subject to binding arbitration pursuant to the FAA’s proarbitration presumption).

. See McMahon, 482 U.S. at 227-28, 107 S.Ct. 2332 (holding that claims brought under 15 U.S.C. §§ 78aa; 78cc(a) are subject to binding arbitration); see also Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 35, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991) (same for the Age Discrimination in Employment Act, 29 U.S.C. §§ 621-34).