ORFINGER, J.
Les Krol appeals an order compelling arbitration of the written warranty claims that he brought against Gibson Auto Sales, Inc. ("Gibson Auto") under the Magnuson-Moss Warranty Act ("MMWA").[1] Because we conclude that the MMWA does not prohibit binding arbitration of written warranty claims and the arbitration agreement here does not violate Federal Trade Commission ("FTC") disclosure rules, we affirm the order compelling arbitration.
BACKGROUND
This case arises from Mr. Krol's purchase of a used truck from Gibson Auto. As part of the sale, the parties executed an installment sales contract and a separate retail purchase order that included a binding arbitration agreement for any dispute related to the truck's purchase.[2] Gibson Auto also extended an express written warranty on the truck.
A few months after purchasing the truck, Mr. Krol sued Gibson Auto under the MMWA, asserting several causes of action related to alleged defects in the truck that Gibson Auto was unable to remedy. In response, Gibson Auto moved to stay the proceedings and to compel arbitration in accordance with the parties' agreement. Mr. Krol opposed the motion, asserting the same arguments he makes in this appeal. Following a hearing, the trial court entered an order granting Gibson's motion to stay and compelling arbitration.
ANALYSIS
We review a trial court's ruling on a motion to compel arbitration de novo. Tropical Ford, Inc. v. Major, 882 So. 2d 476, 478 (Fla. 5th DCA 2004). When deciding whether to compel arbitration according to an agreement, a trial court must consider: "(1) whether a valid written *201 agreement to arbitrate exists; (2) whether an arbitrable issue exists; and (3) whether the right to arbitration was waived." Seifert v. U.S. Home Corp., 750 So. 2d 633, 636 (Fla. 1999). Mr. Krol's appeal centers on the second factor. He argues that no arbitrable issue existed here because MMWA claims are exempt from binding arbitration. Alternatively, he posits that the arbitration agreement is unenforceable because it violates the FTC's disclosure rules since the arbitration clause does not appear in a single document with the other warranty terms.
I. The Arbitrability of MMWA claims.
The United States Supreme Court has not addressed whether MMWA claims are arbitrable, and state and lower federal courts are divided on the issue.[3] However, both federal circuit courts to consider the issue have concluded that the MMWA does not prohibit binding arbitration of written warranty claims.[4] Davis v. S. Energy Homes, Inc., 305 F.3d 1268, 1272 (11th Cir. 2002) (holding that MMWA permits enforcement of binding arbitration agreements related to written warranties); Walton v. Rose Mobile Homes LLC, 298 F.3d 470, 479 (5th Cir. 2002) (holding that "MMWA does not preclude binding arbitration of claims pursuant to a valid binding arbitration agreement, which the courts must enforce pursuant to the [Federal Arbitration Act]").[5] After considering the MMWA and its legislative history, the federal policy favoring binding arbitration, and the persuasive federal circuit court opinions, we conclude that the MMWA permits pre-dispute binding arbitration of written warranty claims.
A. MMWA.
Because product warranties often left consumers with "little understanding of the frequently complex legal implications of warranties on consumer products," 40 Fed. Reg. 60168 (Dec. 31, 1975) (quoting *202 S. Rep. No. 93-151 (1973)), Congress enacted the MMWA "[t]o provide minimum disclosure standards for written consumer product warranties; to define minimum federal content standards for such warranties; to amend the federal trade commission act in order to improve its consumer protection activities; and for other purposes." Magnuson-Moss Warranty-Federal Trade Comm'n Improvement Act, Pub. L. No. 93-637, § 356, 88 Stat. 2183 (1975). The MMWA requires warrantors to "fully and conspicuously disclose in simple and readily understood language the terms and conditions of such warranty." 15 U.S.C. § 2302(a) (2012). It also creates a private right of action for those consumers who have been "damaged by the failure of a ... warrantor ... to comply with any obligation under this chapter, or under a written warranty, implied warranty, or service contract." Id. § 2310(d)(1). An aggrieved consumer has the option to sue for damages and equitable relief in either state courts or federal district courts. Id. If the consumer prevails, he or she is entitled to attorney's fees and costs. Id. § 2310(d)(2).
Along with a private right of action, the MMWA encourages warrantors to settle consumer claims "fairly and expeditiously" through informal dispute settlement procedures. Id. § 2310(a). While the term "informal dispute settlement procedures" is not defined in the MMWA, Congress authorized the FTC to establish minimum requirements for any such procedures that are incorporated into the terms of a written warranty. Id. § 2310(a)(2). If a warrantor establishes an informal dispute settlement procedure, it may include within the written warranty "a requirement that the consumer resort to such procedure before pursuing any legal remedy." Id. § 2310(a)(3)(C). The FTC has broadly interpreted the term "informal dispute settlement procedures" to include both binding and nonbinding arbitration, 16 C.F.R. § 700.8 (2015), and has adopted a regulation stating that informal dispute settlement procedures under the MMWA cannot be legally binding. 16 C.F.R. § 703.5(j) (2015).
B. Federal Policy.
Federal policy favors arbitration. In 1925, Congress enacted the Federal Arbitration Act ("FAA") "to reverse the longstanding judicial hostility to arbitration agreements that had existed at English common law and had been adopted by American courts, and to place arbitration agreements upon the same footing as other contracts." Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 24, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991). To this end, the FAA provides that
[a] written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.
9 U.S.C. § 2 (2012).
The FAA establishes a "liberal federal policy favoring arbitration." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). The Supreme Court has interpreted this policy as establishing a strong presumption favoring the enforcement of binding arbitration agreements so that any doubts over whether an issue is arbitrable should be resolved in favor of arbitration.
*203 Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 626, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985). This presumption applies equally to statutory claims. Shearson/Am. Exp., Inc. v. McMahon, 482 U.S. 220, 226, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987). Courts will enforce binding arbitration of statutory claims, unless Congress has expressed a clear intention to preclude arbitration. Gilmer, 500 U.S. at 26, 111 S.Ct. 1647. The party challenging arbitration bears the heavy burden of proving such congressional intent. Green Tree Fin. Corp.-Ala. v. Randolph, 531 U.S. 79, 91-92, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000).
C. The McMahon Test.
To determine whether Congress has intended to prohibit binding arbitration of a statutory claim, we apply the Supreme Court's McMahon test, which requires us to consider three factors to determine Congress's intent: "(1) the text of the statute; (2) its legislative history; and (3) whether 'an inherent conflict between arbitration and the underlying purposes [of the statute]' exists." Davis, 305 F.3d at 1273 (quoting McMahon, 482 U.S. at 226, 107 S.Ct. 2332 ). To date, "[i]n every statutory right case that the Supreme Court has considered, it has upheld binding arbitration if the statute creating the right did not explicitly preclude arbitration."[6] Id.
Turning to the first McMahon factor, the text of MMWA does not expressly preclude or even mention "binding arbitration." Despite a lack of an express reference, Mr. Krol argues that Congress expressed its intention to prohibit binding arbitration in two ways. One, it created a right to commence a civil action for written warranty claims. Two, when Congress enacted the MMWA, arbitration-both binding and non-binding-was widely considered an "informal" procedure. Hence, he posits that it was likely that Congress would have considered binding arbitration an informal dispute settlement procedure that would serve as a prerequisite to litigation that would be regulated by the FTC.
Both of these arguments fail. First, the provision of a private right of action alone does not establish Congressional intent to prohibit binding arbitration. Davis, 305 F.3d at 1274 (citing Gilmer, 500 U.S. at 29, 111 S.Ct. 1647 (rejecting argument that binding arbitration is improper "because it deprives claimants of the judicial forum provided for by the ADEA")). Second, binding arbitration is not comparable to the informal dispute settlement procedures described in the MMWA because it is not a prerequisite to litigation-it is a substitute for litigation. Walton, 298 F.3d at 475 ; see Mitsubishi, 473 U.S. at 628, 105 S.Ct. 3346 ("By agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum.").
*204 The second McMahon factor requires us to examine the MMWA's legislative history. Like the text, the legislative history does not suggest that binding arbitration is prohibited. Indeed, it implies the opposite. For instance, the Senate declared in its Conference Report that litigants may look to the courts and arbiters alike "to resolve 'actions' and to be the 'ultimate' means of resolving an MMWA claim." Jones v. Gen. Motors Corp., 640 F. Supp. 2d 1124, 1137 (D. Ariz. 2009) (citing S. Rep. No. 93-1408 (1974), as reprinted in 1974 U.S.C.C.A.N. 7755). The Senate Conference Report further explains 15 U.S.C. § 2304(a)(4) -the section of the MMWA that gives the FTC the ability to define what constitutes "a reasonable number of attempts" a warrantor must make to remedy a product defect before a refund or replacement must be provided-by stating that "if the [FTC] does not determine by rule what constitutes a reasonable number of attempts in a given situation, then the parties or, ultimately , a third party (arbiter or judge) would decide." Id. (quoting S. Rep. No. 93-1408, as reprinted in 1974 U.S.C.C.A.N. at 7757) (emphases added). This explanation of 15 U.S.C. § 2304, which, among other things, authorizes the FTC to establish minimum standards regarding the duration of a warranty, consequential damage provisions, and conditions imposed by the warrantor, demonstrates that binding arbitration is permitted to resolve MMWA disputes. In fact, the same Conference Report recognizes that when there is no FTC rule regulating the reasonableness of a warrantor's duty, "the consumer could challenge the reasonableness of such requirement by bringing an action for breach of warranty and arguing that the warrantor had breached his full warranty obligation. The burden would then be upon the warrantor to establish before an arbiter or in a court that the requirement ... was reasonable ...." Id. at 1138 (quoting S. Rep. No. 93-1408, as reprinted in 1974 U.S.C.C.A.N. at 7757). Thus, the legislative history suggests that Congress considered binding arbitration a reasonable alternative to civil litigation for resolving MMWA claims. At least, it does not suggest that binding arbitration is prohibited.
The third McMahon factor requires us to consider whether there is an underlying conflict between binding arbitration and the purposes of the MMWA. Mr. Krol argues that such a conflict exists, suggesting that binding arbitration of written warranty claims would undermine Congress's goals of protecting consumers and correcting the inequality in bargaining power between warrantors and consumers.
Neither of these goals overrides the strong federal policy favoring arbitration. To the first goal, the Supreme Court has repeatedly enforced binding arbitration of statutory claims where the purpose of the statute was consumer protection. See Davis, 305 F.3d at 1276 (collecting cases). Nothing suggests that consumers are less able to vindicate their MMWA claims through arbitration than through civil litigation. To the second goal, unequal bargaining power alone will not preclude binding arbitration when Congress has not expressed clear intent to do so. See id. at 1277 (citing Gilmer, 500 U.S. at 33, 111 S.Ct. 1647 (stating that "[m]ere inequality in bargaining power, however, is not a sufficient reason to hold that arbitration agreements are never enforceable in the employment context")). Nothing here suggests that the inequality of bargaining power between consumers and warrantors is more substantial than in other instances when the Supreme Court has allowed binding arbitration.
D. The Chevron Test.
Notwithstanding the results of our McMahon analysis, Mr. Krol contends that *205 since Congress gave the FTC rulemaking authority to enforce the MMWA, we must defer to its regulations prohibiting binding arbitration of MMWA written warranty claims. See 16 C.F.R. §§ 700.8, 703.5(j) (2015). Because Congress has given the FTC rulemaking authority regarding portions of the MMWA, we apply the two-prong test set forth in Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), to determine whether we must defer to the FTC's interpretive regulations.
Chevron informs us to defer to the FTC's interpretive regulations prohibiting binding arbitration only if: (1) Congress has not directly spoken to the specific issue; and (2) the FTC's interpretation "is based on a permissible construction of the statute." 467 U.S. at 843, 104 S.Ct. 2778. Because the MMWA does not speak to binding arbitration, we must only consider the test's second prong.[7]
State and federal courts are again divided over whether the FTC's reading of the MMWA is permissible. The only federal circuit court to consider the reasonableness of the FTC's interpretation has found it unreasonable. See Davis, 305 F.3d at 1279. For several reasons, we agree with Davis that the FTC's interpretation that the MMWA precludes binding arbitration is unreasonable.
First, for the FTC to have authority to regulate binding arbitration, we would have to accept the notion that Congress considered binding arbitration an informal dispute settlement mechanism. We do not. As our discussion of the McMahon test demonstrates, Congress appears to have understood binding arbitration to be a substitute for a judicial forum, not an informal dispute settlement mechanism.
Second, the FTC's prohibition of arbitration relies in part on the idea that by providing a judicial forum, Congress intended to preclude binding arbitration. The Supreme Court has been unwavering on this point-a statute's provision of a judicial forum does not show Congressional intent to prohibit arbitration. Thus, we too reject this notion.
Third, the FTC's ultimate rationale for prohibiting binding arbitration is rooted in the belief that an arbitral forum does not ensure consumer protection. For more than half a century, the Supreme Court has not viewed arbitration as harmful to consumers, but instead as a proceeding that is adequate to protect consumers. See Davis, 305 F.3d at 1279 (citing Allied-Bruce Terminix Cos. v. Dobson, 513 U.S. 265, 280, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995) (noting that "arbitration's advantages often would seem helpful to individuals, say, complaining about a product, who need a less expensive alternative to litigation")). The Supreme Court has refused to defer to interpretive regulations prohibiting arbitration that have depended on the Court's formerly held view disfavoring arbitration. See, e.g., McMahon, 482 U.S. at 232-34, 107 S.Ct. 2332 (rejecting SEC's interpretation of Securities Exchange Act of 1934 that binding arbitration agreements were prohibited). Given the Supreme Court's current view on arbitration, *206 the FTC's continued hostility towards arbitration is unwarranted.
In sum, given the limited scope of the FTC's authority to regulate only non-binding, pre-dispute settlement procedures and the federal policy favoring arbitration enforcement, we conclude the FTC's prohibition of arbitration is based on an impermissible construction of the statute. As a result, we need not defer to the FTC's interpretive regulations, and instead, hold that MMWA claims can be subject to binding arbitration.
II. The FTC's Single Document Rule.
Mr. Krol also contends that the arbitration agreement here is unenforceable because it was in the retail purchase order and not in a single document along with the other warranty terms.[8]
The MMWA requires that warrantors, providing a written warranty to a consumer, must "fully and conspicuously disclose in simple and readily understood language the terms and conditions of such warranty." 15 U.S.C. § 2302(a) (2012). Congress delegated authority to the FTC to establish the items warrantors must disclose. In response, the FTC requires a warrantor to disclose nine material facts related to the warranty, one of which requires disclosure in the warranty of "[i]nformation respecting the availability of any informal dispute settlement mechanism elected by the warrantor in compliance with part 703 of this subchapter." 16 C.F.R. § 701.3(a)(6) (2015). The FTC has also established what has been called the single document rule, which requires warrantors to "clearly and conspicuously disclose [all warranty terms] in a single document in simple and readily understood language." Id. § 701.3(a). The purpose of the single document rule is to avoid consumer confusion.
In arguing that the single document rule required Gibson Auto to disclose the binding arbitration clause in the same document with the other warranty terms, Mr. Krol relies on Cunningham v. Fleetwood Homes of Georgia, 253 F.3d 611, 624 (11th Cir. 2001). In that case, a mobile-home manufacturer, as a third-party beneficiary of a stand-alone arbitration agreement, moved to compel arbitration of a consumer's warranty claims against the warrantor under the MMWA. 253 F.3d at 613. The Eleventh Circuit affirmed the trial court's order denying the manufacturer's motion, concluding that the stand-alone arbitration agreement violated the FTC's single document rule. In reaching this conclusion, the court emphasized that the MMWA and applicable FTC rules obligate warrantors to "clearly and conspicuously disclose [warranty terms] in a single document in simple and readily understood language." Id. at 620 (quoting 16 C.F.R. § 701.3(a) ). One such term obligates a warrantor to disclose "[i]information respecting the availability of any informal dispute settlement mechanism." Id. at 621. Interpreting the "informal dispute settlement mechanism" to include binding arbitration, the court found that the failure to include the binding arbitration agreement in the warranty document violated the FTC's disclosure requirements. Id. at 620.
The Third District Court of Appeal has adopted Cunningham's application of the *207 single document rule. See Larrain v. Bengal Motor Co. Ltd., 976 So. 2d 12, 14 (Fla. 3d DCA 2008) (determining, based on Cunningham, that "clear language of the MMWA expresses Congress' intent that any arbitration agreement must be disclosed within the written warranty and not as a stand-alone document," and thereafter, holding that single subject rule governs disclosure of binding arbitration agreements) (emphasis added). However, we decline to do so.
Since Cunningham, state and federal district courts have divided over whether to apply the single document rule to binding arbitration agreements. Compare Jones, 640 F. Supp. 2d at 1143, Patriot Mfg., Inc. v. Dixon, 399 F. Supp. 2d 1298, 1304-09 (S.D. Ala. 2005), and Patriot Mfg., Inc. v. Jackson, 929 So. 2d 997, 1005-07 (Ala. 2005) (all holding single document rule does not require arbitration agreement be included in written warranty), with Porter v. Chrysler Grp. LLC, No. 6:13-CV-555-ORL-37, 2013 WL 6768218, at *1 (M.D. Fla. Dec. 19, 2013), TGB Marine, LLC v. Midnight Exp. Power Boats, Inc., No. 08-60940-CIV, 2008 WL 3889578 (S.D. Fla. 2008), Harnden v. Ford Motor Co., 408 F. Supp. 2d 300, 307 (E.D. Mich. 2004), and Larrain, 976 So. 2d at 14 (all holding single document rule requires arbitration agreement to be included in written warranty).
The courts that have refused to follow Cunningham have done so by reasoning that its application of the single document rule rests on an incorrect understanding that the terms "binding arbitration" and "informal dispute settlement procedures" are interchangeable. See, e.g., Jones, 640 F. Supp. 2d at 1143 ; Dixon, 399 F. Supp. 2d at 1304-09 ; Jackson, 929 So. 2d at 1005-07. Instead, these courts conclude that the Eleventh Circuit subsequently reversed positions in Davis, making clear that binding arbitration is not an informal dispute settlement procedure or a prerequisite to litigation, a notion that also aligns with the Supreme Court's view of binding arbitration. See Mitsubishi, 473 U.S. at 628, 105 S.Ct. 3346.
In Dixon, the District Court for the Southern District of Alabama best explained Davis's effect on both Cunningham's holding and on the single document rule, writing:
In the wake of Cunningham and Davis, then, what is the present status of the MMWA's disclosure requirements? Clearly, the single document rule remains alive and well. But the statutory and regulatory scheme does not require that all information having any bearing on the warranty must be disclosed within the warranty. To the contrary, the MMWA-and more precisely § 2302(a) -plainly provides that a warrantor's required disclosures under the single document rule are limited to those specifically enumerated in the FTC regulations. Those regulations do not identify arbitration agreements as items that must be disclosed, but they do mandate disclosure of "informal dispute settlement mechanisms." The Davis case, which is binding precedent to this Court, decided that arbitration agreements are not "informal dispute settlement mechanisms" in the context of the MMWA.
Under this synopsis of the law, then, it is plain that, while the single document rule enjoys continued vitality, arbitration agreements lie beyond the scope of the disclosures required pursuant to that rule.
399 F. Supp. 2d at 1303-04.
This reasoning is persuasive. Cunningham's application of the single document rule rests solely on the notion that binding arbitration is an informal dispute settlement procedure. If we accept this premise, *208 we would need to then defer to the FTC's regulations prohibiting binding arbitration because as an informal dispute settlement mechanism, binding arbitration would then be subject to the FTC's rulemaking authority. This is a view that we do not accept.
The FTC's disclosure regulations do not explicitly mention binding arbitration. By enforcing an arbitration disclosure requirement that is not expressly included in the FTC's regulations, this Court would "encroach on the [MMWA's] statutory and regulatory framework by unilaterally constructing a judicial rule that neither Congress nor the FTC has seen fit to create." Dixon, 399 F. Supp. 2d at 1309. The MMWA "requires disclosure in the warranty itself only 'to the extent required by the rules of the [FTC],' and the FTC has seen fit to require disclosure of required resort to an informal dispute-settlement mechanism, not the completely separate process of binding arbitration." Jackson, 929 So. 2d at 1006. For these reasons, we hold that the FTC's single-document rule does not apply to binding arbitration agreements. We disagree with the Third District Court's opinion in Larrain and certify conflict.
AFFIRMED; CONFLICT CERTIFIED.
EVANDER, C.J. and SASSO, J., concur.

15 U.S.C. §§ 2301 -12 (2012).

The arbitration clause in the retail buyer order states in full:
Dealer and customer agree that any controversy, claim, suit, demand, counterclaim, cross claim, or third-party complaint, arising out of, or relating to this Order or the parties' relationship (whether statutory or otherwise), including, but not limited to any matter that may have induced the Customer to enter into any relationship with Dealer and any disputes regarding the validity or enforceability of this clause (collectively referred to as "Claim"), shall be submitted to final and binding arbitration .... The arbitration shall be final and binding on all parties.

Compare, e.g., Jones v. Gen. Motors Corp., 640 F. Supp. 2d 1124, 1143 (D. Ariz. 2009), S. Energy Homes, Inc. v. Ard, 772 So. 2d 1131, 1135 (Ala. 2000), Borowiec v. Gateway 2000, 209 Ill.2d 376, 283 Ill.Dec. 669, 808 N.E.2d 957, 970 (2004), Abela v. Gen. Motors Corp., 469 Mich. 603, 677 N.W.2d 325, 327 (2004), and In re Am. Homestar of Lancaster, Inc., 50 S.W.3d 480, 492 (Tex. 2001) (all holding MMWA claims are subject to binding arbitration), with Higgs v. Warranty Grp., No. C2-02-1092, 2007 WL 2034376, at *8 (S.D. Ohio July 11, 2007), Rickard v. Teynor's Homes, Inc., 279 F. Supp. 2d 910, 921 (N.D. Ohio 2003), Browne v. Kline Tysons Imps., Inc., 190 F. Supp. 2d 827, 831-33 (E.D. Va. 2002), Pitchford v. Oakwood Mobile Homes, Inc., 124 F. Supp. 2d 958, 962-65 (W.D. Va. 2000), and Koons Ford of Balt., Inc. v. Lobach, 398 Md. 38, 919 A.2d 722, 737 (2007) (all holding MMWA claims are exempt from binding arbitration).

In Kolev v. Euromotors West/The Auto Gallery, 658 F.3d 1024 (9th Cir. 2011), the Ninth Circuit held that the MMWA prohibited pre-dispute binding arbitration on written warranty claims. But that opinion has since been withdrawn. See Kolev v. Euromotors W./The Auto Gallery, 676 F.3d 867 (9th Cir. 2012) ("The Opinion filed September 20, 2011, and appearing at 658 F.3d 1024 (9th Cir. 2011), is withdrawn. It may not be cited as precedent by or to this court or any district court of the Ninth Circuit.") (citations omitted).

In Florida, only the Second District Court of Appeal has commented on the arbitrability of MMWA claims. See Stacy David, Inc. v. Consuegra, 845 So. 2d 303 (Fla. 2d DCA 2003). In Consuegra, the Second District, though not specifically asked to decide whether MMWA claims are arbitrable, briefly addressed the issue when considering the validity of an arbitration agreement. Citing Davis, it found that "the Eleventh Circuit has required arbitration of claims under the Magnuson-Moss Act." Consuegra, 845 So. 2d at 306. Based on Davis, the court concluded that "no count of the [consumer's] complaint appears to fall outside the arbitration agreement." Id. at 306-07. The Second District then reversed the trial court's order and compelled arbitration of the buyer's MMWA claims. Id. at 306.

The Supreme Court has upheld binding arbitration agreements related to claims arising under the following federal statutes: Securities Act of 1933, Rodriguez de Quijas v. Shearson/American Express, Inc., 490 U.S. 477, 484-86, 109 S.Ct. 1917, 104 L.Ed.2d 526 (1989), overruling Wilko v. Swan, 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953) ; Age Discrimination in Employment Act ("ADEA"), Gilmer, 500 U.S. at 35, 111 S.Ct. 1647 ; Sherman Act, Mitsubishi, 473 U.S. at 628, 105 S.Ct. 3346 ; Securities Exchange Act of 1934 and Racketeer Influenced and Corrupt Organization Act ("RICO"), McMahon, 482 U.S. 220, 107 S.Ct. 2332 ; Truth in Lending Act, Green Tree Financial Corp.-Alabama, 531 U.S. at 88-92, 121 S.Ct. 513 ; RICO, PacifiCare Health Systems, Inc. v. Book, 538 U.S. 401, 123 S.Ct. 1531, 155 L.Ed.2d 578 (2003) ; Credit Repair Organizations Act, CompuCredit Corp. v. Greenwood, 565 U.S. 95, 132 S.Ct. 665, 181 L.Ed.2d 586 (2012) ; and the Fair Labor Standards Act, Epic Systems v. Lewis, --- U.S. ----, 138 S. Ct. 1612, 200 L.Ed.2d 889 (2018).

In Walton, the Fifth Circuit avoided Chevron's second prong by concluding that Congress spoke to binding arbitration when it expressed in the FAA a clear intention to favor enforcement of binding arbitration agreements. 298 F.3d at 475. We disagree and join the majority of courts who have concluded that Congress has not spoken directly to the permissibility of binding arbitration under the MMWA. See, e.g., Davis, 305 F.3d at 1278 ; Jones, 640 F. Supp. 2d at 1139 ; Higgs, No. C2-02-1092, 2007 WL 2034376, at *8 ; Lobach, 919 A.2d at 737.

Under Florida law, when, as here, parties to a contract execute two or more documents at or near the same time and concern the same transaction or subject matter, the documents are generally construed together as a single contract. E.g., Mnemonics, Inc. v. Max Davis Assocs., 808 So. 2d 1278, 1280 (Fla. 5th DCA 2002) ; see Wilson v. Terwillinger, 140 So. 3d 1122, 1124 (Fla. 5th DCA 2014) (reiterating "contemporaneous instrument rule" and that origins "are of rather ancient vintage" and has been consistently applied since inception).